Argued January 22; affirmed March 10; rehearing denied
April 14, 1931

## STATE *v.* WALKER
(296 P. 850)

*John J. Beckman,* of Portland, for appellant.

*Earl A. Nott,* District Attorney, of McMinnville, for the State.

CAMPBELL, J. On the 5th of May, 1930, the defendant, R. L. Walker, was indicted by the grand jury of Yamhill county of the crime of unlawful possession of intoxicating liquor. On this indictment he was tried and convicted, and on July 28 was sentenced to be imprisoned in the county jail for thirty days and to pay a fine of $500 and the costs of the action. From this judgment defendant appeals.

Seasonably the defendant filed the following motion:

"Comes now the defendant by John J. Beckman, his attorney, and moves to suppress certain evidence, to wit: certain intoxicating liquor now in possession of plaintiff based upon the affidavit of defendant hereto annexed and made a part of this motion."

Accompanying the motion was the following affidavit:

"I, R. L. Walker, being first duly sworn say: That I am the defendant in the above entitled cause. That on April 12, 1930, in the evening of said day there was a dance and reception being held in a certain barn on the premises belonging to my wife, Mrs. Mary E. Walker, and which I had full management and control thereof, near Bellvue, Yamhill county, Oregon. That this dance and reception was purely for invited guests and not open to the public and the guests were there at my invitation. That on to wit: 10:30 p. m. of said day while said reception was in progress, G. W. Manning, the sheriff of said county, and his deputy wrongfully and unlawfully entered the said premises and the said barn without any search-warrant of any sort and without permission or invitation on my part and then and there searched the premises and claimed to have found there a certain quantity of beer, and thereupon arrested me and others on the premises, and based upon their said actions caused the charge and indictment against me in the above entitled cause.

"That the said sheriff and his deputy committed trespass in entering upon said premises and making such search of the same in violation of the rights guaranteed to me by the Constitution of the State of Oregon against unreasonable searches and seizures."

The state filed the following counter-affidavit:

"Comes now the Plaintiff and in answer to Defendants Affidavit and Motion to suppress evidence, submits the following Counter-Affidavit:

"I, G. W. Manning, being first duly sworn depose and say that on the evening of April 12th, 1930, I was

driving with my son, Elisha, who was then and there a duly qualified and acting deputy sheriff, on official business along the county road past the farm owned by Mrs. Mary E. Walker, referred to in Defendant's Affidavit; that as I drew nearer said barn on said place I saw a light in the barn and a number of cars parked about it; that at said time and place I was and am familiar with the said farm and the community where it is located, and I knew that the buildings on said premises were vacant and seeing the lights and cars, I drove in to see what was going on. As we turned from the county road into the premises I heard music and dancing and the doors to the lower part of said barn were open: I, with Elisha Manning, walked in and went up the stairway to the upper floor where there was a crowd of people and a dance in progress; when we entered the loft of the barn where the dancing was in progress, we saw certain intoxicating liquor in the possession of the Defendant and I then and there placed the Defendant under arrest and seized said liquor, that I did not know that there was any intoxicating liquor in said barn and did not go into said barn for the purpose of making any search for intoxicating liquor, but saw said liquor and seized it, as above stated and not otherwise; that I have personally talked with a large number of people, who were in attendance at said party and dance, and who stated that they were not invited by Defendant, but heard of the party in other and indirect ways and attended; that among said persons so interviewed and who stated that they attended said party without an invitation from the Defendant were, Mary Orndoff, Alice Barcroft, Howard Copeland, and Mrs. G. E. Vannice.''

After a hearing and consideration of the affidavits, the court denied the motion to suppress. On the trial of the cause, the evidence of the arrest and the circumstances of the finding and taking possession of the intoxicating liquor mentioned in the motion was substantially as alleged in the sheriff's affidavit. When

the evidence sought to be suppressed was offered in the trial, the defendant objected. The objection was overruled and an exception saved. This is the only question raised in the appeal.

■ The defendant claims that the evidence admitted was obtained in violation of section 9, article I, of the Oregon Constitution, which reads as follows:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search and seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation, describing the place to be searched, and the person or thing to be seized."

On the night of April 12, 1930, G. W. Manning, sheriff of Yamhill county, accompanied by his son, Elisha, who was a deputy sheriff, was traveling in his automobile along a county road which passes a farm owned by Mrs. Mary E. Walker, wife of the defendant. This farm is located about twelve miles southeasterly of McMinnville in said county. The sheriff was well acquainted with defendant and familiar with this community and this particular farm. He knew that the buildings on the farm were vacant and had been unoccupied for considerable time. The sheriff was on his way to one Tillman Johnson's who lived some distance beyond the Walker place. As he came close to the Walker place he saw lights in the barn and automobiles standing in front of it. The barn is about 150 feet distant from the road and there is nothing to obstruct the view, and it can be seen by persons travel-the road for quite a distance. The barn is a large structure, two stories high. As the plaintiff entered the lane leading to the barn, he was like Tam o' Shanter approaching Alloway's old haunted kirk, "It seemed all in a bleeze, thro ilka bore, the gleams were glancing,

and loud resounded mirth and dancing.'' As the sheriff entered the barnyard he glanced around the lot where the cars were parked and observed that the cars were unoccupied; then walked into the main part of the barn through the front door which was open; then turned through a passage by the side of a stairway into a portion of the barn where the horse stalls were located. He and his deputy glanced around again to see if any people were located here and found none. There being no lights on the first floor, the officers used their flashlights. They then proceeded up a stairway leading to the second floor which was lighted and where the dancing was in progress. As the sheriff looked out over the dance floor, he saw parties with glasses containing liquor in their hands, and a pitcher partially filled with the same kind of liquor setting on the floor. Upon the appearance of the officers, these glasses were emptied to the floor.

The sheriff's deputy saw the defendant, who had control of the building, setting down a glass jug nearly full of liquor. He also observed a box containing bottles of liquor which proved to be beer. The sheriff then informed the party that they were all under arrest and immediately seized all the intoxicating liquor in sight and proceeded to search the building for more. His search was rewarded by the discovery of another case of beer which he also seized. He then took the whole party to McMinnville where he detained them three or four hours, when he released all except defendant against whom he filed a charge of unlawful possession of intoxicating liquor. On this charge the indictment and conviction was had.

The defendant, in his affidavit, claims that the party that was being held in the barn loft on this particular night was intended as a very exclusive func-

tion. In fact, he says, it was strictly an invitational affair, and that no one was invited except his friends and such friends as his friends might invite. And it is quite evident from his viewpoint, that the sheriff of Yamhill county did not belong in either catagory. In other words, he looked upon the sheriff as a rank outsider. His affidavit says that the party was intended as a reciprocal reception and dance. He does not state precisely for whom the reception was intended, but leaves no doubt that it was not the sheriff.

This case depends entirely upon whether the sheriff at the time he visited the premises was an unlawful trespasser. Let us consider the time, the place and the circumstances of the sheriff's visit. It was between ten-thirty and eleven o'clock at night. The gates leading to the barn were ajar. Light was shining from the loft of the barn. The dwelling house was still dark and unoccupied. Music and dancing were in progress. The door to the barn was open. The owner was not temporarily absent, but had not occupied the premises for months. This was such an unusual occurrence that the sheriff might well be induced.to make inquiries. It would be considered a very reasonable thing for him to do. Suppose that the owner was not found on the premises, and those that were there were using the barn, without authority, for an unlawful purpose. Then the sheriff's act would have been highly commended. The sheriff was not in search of evidence of any particular crime, but having entered and found a crime being committed in his presence, he had a right to take the steps which he had taken. While there is some dispute in the testimony as to the sequence of the steps taken, the sheriff claims that he made the arrest before seizure or search. The learned trial court accepted the sheriff's view, as he had a right to do, as to the way in which the events occurred.

■■ It will not be contended that the sheriff could have been arrested for going upon the premises at the time and in the manner in which he paid his visit. While he was not invited to come either orally or in writing, neither was he forbidden to come upon the premises, nor was he asked to depart therefrom, so that he was not an unlawful trespasser: Oregon Code 1930, 14-371. It required no search to discover the liquor. It was not concealed. It was in plain view, in the presence of the sheriff and every other person on the floor: *State v. Laundy*, 103 Or. 496 (204 P. 958, 206 P. 290). Therefore, seeing the liquor and the defendant in possession, he had a right to make the arrest without a warrant: Oregon Code 1930, 13-2111. The arrest being lawful, seizure of anything of evidentiary value or search of the premises thereafter was lawful: *State v. McDaniel*, 115 Or. 187 (231 P. 965, 237 P. 373). Evidence coming lawfully into the possession of the state could be used against the defendant.

The court committed no error in refusing to suppress, nor in admitting the seized exhibits in evidence. None of defendant's constitutional rights were invaded. The judgment is affirmed.

BEAN, C. J., BROWN and BELT, JJ., concur.