Argued May 7, reversed and remanded May 21, petition for
rehearing denied May 30, petition for review allowed
September 5, 1973

STATE OF OREGON, *Respondent, v.* WILLIAM
ROBERT HAAS, whose true name is WILLIAM
ROBERT HASS (No. 72-124-C), *Appellant.*

510 P2d 852

*Sam A. McKeen,* Klamath Falls, argued the cause and filed the brief for appellant.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant was convicted by a jury of first degree burglary (ORS 164.225) and appeals the resulting sentence of $250 fine and two years' probation. Evidence was that two bicycles had been stolen, one from the garage of the Lehman house and one from the garage of the Jackson house in the same area (Moyina Heights) of Klamath Falls in August 1972. Defendant was indicted for the burglary from the Lehman residence. He was not charged with the other burglary.

Mr. Lehman and his son testified that they had witnessed someone riding the bicycle out of their driveway and gave chase to a vehicle from which they eventually recovered the bicycle. They identified the defendant as the driver of the vehicle, and his only companion as the person who had taken the bicycle.

*In camera,* Officer Osterholme testified that after *Miranda* warnings,[1] he had questioned defendant about the Lehman theft. Defendant in substance replied that he had stolen two bicycles that afternoon and did not know which theft the officer was talking about. Defendant then showed him where the second bicycle was concealed and pointed out the two houses from which the bicycles were taken. Prior to locating the second bicycle but after his initial statement to the officer, defendant had asked if he could phone his lawyer. The court, on motion of the defendant, ruled that all reference to defendant's activities after his request for a

---

[1] Miranda v. Arizona, 384 US 436,. 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

lawyer would not be admitted for failure to comply with the *Miranda* rules.

Officer Osterholme then testified to the jury as to the statement made by defendant that he had stolen two bicycles that day. He also testified that he had recovered a bicycle and had taken it to a Mr. White who identified it as belonging to his son, Roy. Two members of the Jackson family testified that a bicycle belonging to Roy White had been kept in their garage. Mr. Jackson testified he was unaware the bicycle had been stolen until a state police officer had brought it to his house to be identified.

Defendant took the stand and testified that he had had no prior knowledge of the burglaries, which had actually been committed by two other people who were riding around with him in his vehicle. But he said he had participated in the attempt to conceal the bicycles from their owners. He denied knowing from which houses the bicycles had been taken.

On rebuttal Officer Osterholme was permitted to testify for impeachment purposes only that defendant had taken him to and had identified the two houses.

Defendant's assignments of error raise four issues. (1). Is an attached garage part of a dwelling so that burglary from a garage would be first degree burglary? (2). Must an indictment for burglary state the crime intended to be committed inside of the entered building? (3). Was the evidence of the second burglary admissible? (4). May evidence obtained in violation of the *Miranda* rules be admitted for the limited purpose of impeaching the credibility of a witness?

(1). Defendant bases his argument that an at-

tached garage is not a dwelling on the contention that the 1971 legislature redefined "dwelling" and defined "building" for the first time in such a manner that such a garage would no longer be included as a dwelling.[2]

■ We do not reach this question of statutory construction because the record shows that this garage was neither a separate structure nor a separate unit. The garage was under the same roof as the rest of the dwelling and was surrounded on three sides by rooms occupied by the family. As such it was structurally no different than any other room in the house. *Cf. State v. Burns,* 9 Or App 392, 495 P2d 1240 (1972).

(2). Defendant demurred to the indictment during the course of the trial on the ground that the indictment failed to state a crime.[3]

---

[2] Former ORS 164.210 (2) (repealed 1971) provided:

" 'Dwelling house' includes any building of which any part has usually been occupied by any person lodging therein at night, and any structure joined to and immediately connected with such building."

ORS 164.205 (1) and (2) now read:

"(1) 'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building.

"(2) 'Dwelling' means a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present."

[3] We consider this demurrer to be based on ORS 135.630 (4) which provides for a demurrer on the ground "[t]he facts stated do not constitute a crime * * *."

We do not consider here what the proper ruling would have been had a demurrer based on ORS 135.630 (2) been made at the proper time, such a demurrer being equivalent to a motion to make more definite and certain.

■ The general rule is that an indictment in the
language of the statute creating the offense is
sufficient as long as it alleges all of the elements of
the crime that must be proven for conviction. *State v.
Smith,* 182 Or 497, 188 P2d 998 (1948); *State v. Jim/
White,* 13 Or App 201, 508 P2d 462 (1973).

■ The indictment in this case is in the language
of the statute⊕ and is therefore sufficient to state the
crime charge. *State v. Jim/White,* supra, 13 Or App
at 217.

■ (3). Was evidence of the second burglary ad-
missible? The general rule is that evidence of the
commission of other crimes by the defendant is inad-
missible. *State v. Lehmann,* 6 Or App 600, 488 P2d
1383 (1971); *State v. Woolard,* 2 Or App 446, 467 P2d
652, Sup Ct *review denied* (1970), *cert denied* 406 US
972 (1972). But such evidence is admissible where it
shows " ' "* * * a common scheme or plan embracing
the commission of two or more crimes, so related to
each other that the proof of one tends to establish
the others * * *." ' " *State v. Woolard,* supra, at 449.
The test is whether the relevance of the evidence out-
weighs its prejudicial effect. *State v. Spunaugle,* —
Or App 583, 587-88, 504 P2d 756 (1972); *State v.
Lehmann,* supra. Defendant contends that the second
burglary was never connected to the defendant in the
state's case-in-chief. Therefore the relevance of the evi-
dence to the crime charged was never shown and thus
there was nothing to outweigh the prejudicial effect.

■ While the state was not permitted to show a

⊕ORS 164.215 (1) provides:
"A person commits the crime of burglary * * * if he en-
ters or remains unlawfully in a building with intent to commit
*a crime* therein." (Emphasis supplied.)

direct link between the defendant and the second crime, because the evidence of defendant's locating the second bicycle was excluded and because the Jacksons could not state with certainty that the bicycle had been stolen on the same day that a bicycle was taken from the Lehman residence, we feel that the evidence was sufficiently relevant to permit its introduction. This is so because the state did show that the defendant had volunteered that he was involved in two bicycle thefts in the same area. The evidence showed the burglary at the Jackson residence had definitely occurred within a few days of the crime charged and quite possibly on the same day. The state need not prove beyond a reasonable doubt that defendant committed the second crime in order for evidence thereof to be admitted. *Cf. State v. Johnson,* 13 Or App 51, 507 P2d 828 (1973).

■■ (4). This question stems from the allowance by the trial judge of the admission of evidence obtained from defendant in violation of the *Miranda* rules for the limited purpose of impeaching defendant's credibility. In *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971), the court held such evidence if otherwise "trustworthy" was admissible for the limited purpose of impeaching the credibility of a defendant who took the stand. In *State v. Brewton,* 247 Or 241, 422 P2d 581, *cert denied* 387 US 943 (1967), the Oregon Supreme Court held such evidence was not admissible for impeachment purposes. We are bound by the decision of our own Supreme Court in this area. *State v. Evans,* 2 Or App 441, 468 P2d 657 (1970), *reversed* 258 Or 437, 483 P2d 1300 (1971).

Reversed and remanded.