Argued October 15, affirmed December 31, 1973

# STATE OF OREGON, *Petitioner, v.* WILLIAM ROBERT HAAS, whose true name is WILLIAM ROBERT HASS, *Respondent.*

517 P2d 671

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Sam A. McKeen,* Klamath Falls, argued the cause and filed a brief for respondent.

HOLMAN, J.

The defendant was convicted pursuant to a jury trial of the crime of first degree burglary. The Court of Appeals reversed and remanded for a new trial[1] because the trial court allowed information obtained by the police in violation of *Miranda v. Arizona*[2] to be used to impeach defendant's testimony. This court granted review for the sole purpose of determining whether information secured in violation of *Miranda* rules can be used for impeachment purposes under the circumstances which existed in this case.

Two bicycles were stolen from houses in the Moyina Heights district of Klamath Falls. One was taken from the Lehman residence and one was taken from the Jackson residence. Defendant was indicted for the burglary of the Lehman residence.

In an *in camera* hearing the arresting officer testified that after he gave the *Miranda* warnings, he questioned defendant about the Lehman theft and the defendant responded that two bicycles had been stolen and he did not know which theft the officer was talking about. The officer then requested defendant to accompany him on a further investigation to clear up the matter and defendant agreed. However, on the way to the site of the thefts defendant had some misgivings and indicated he wanted to talk to a lawyer. The arresting officer responded that he could see a

---

[1] 13 Or App 368, 510 P2d 852 (1973).

[2] 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966).

lawyer when they got back and proceeded with the investigation, during which defendant pointed out the two houses from which the bicycles had been taken. Pursuant to the disclosures made at the *in camera* hearing, the trial judge ruled that all references to defendant's activities after his request for a lawyer were barred from introduction in evidence.

Thereafter, defendant took the stand and testified that he had participated in concealing the bicycles when he knew they had been stolen, but he denied having known that they were going to be stolen and the houses from which they were taken. On rebuttal, over objection, the arresting officer was permitted to testify for impeachment purposes that defendant had directed him to both the Lehman and Jackson houses and had identified them as being the ones from which bicycles had been taken.

The question of the use, for impeachment purposes, of information secured in violation of rules similar to those of *Miranda* was presented to this court in the case of *State v. Brewton.*[8] In that decision, in which the court was divided four to three, we held that information secured in violation of the rules set forth in *Escobedo v. Illinois,*[9] *Miranda's* precursor, could not be used for impeachment purposes. Since this court's decision in *Brewton,* the Supreme Court of the United States, in *Harris v. New York,*[10] has faced a similar problem in relation to *Miranda* rules and has reached a decision contrary to *Brewton* based upon reasoning similar to the dissenting opinions in *Brew-*

[8] 247 Or 241, 422 P2d 581, *cert. denied,* 387 US 943, 87 S Ct 2074, 18 L Ed 2d 1328 (1967).

[9] 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964).

[10] 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971).

*ton.* The rationale of the *Harris* opinion was that while information secured in violation of the *Miranda* rules may not be used to incriminate a defendant, neither should such violation be used as a shield for or an invitation to perjury; and, assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.[6]

It was for the purpose of deciding whether we wished to overrule *Brewton* that we took review of this case. However, we now find that it is not necessary to make that determination in deciding this case because whether the reasoning of *Brewton* or of *Harris* is used, the opinion of the Court of Appeals must be affirmed and the defendant's conviction reversed.

In *Brewton* and *Harris* either insufficient or no warnings were given. In those situations, before questioning begins, the police do not know whether or not they will get incriminating information from the defendant if they give the required warnings. Experience has taught there is a good possibility they will.[7] Therefore, the argument can be made that in such situations it appears likely that police will not take the chance of losing incriminating evidence for their case in chief by not giving adequate warnings. The chance of being able, without sufficient warnings, to use what information they get for impeachment affords insufficient advantage to induce the police to endanger their chance of making a case at all. Therefore, in such circumstances the prophylactic measure of total exclu-

[6] *Id.* at 225-26.

[7] E. Driver, *Confessions and the Social Psychology of Coercion,* 82 Harv L Rev 42 (1968).

sion may not be necessary because police will not be induced by the more limited use to fail to give the proper warnings.

However, such is not this case. The defendant here was given proper warnings and took them at their word and asked for a lawyer.[9] The police then knew they would most likely get nothing further from defendant if he consulted a lawyer. Therefore, they had nothing to lose and something to gain by violating *Miranda* if the State is permitted to use such information as was secured by continued interrogation for impeachment purposes. In such a situation, there is no pressure whatsoever to obtain compliance and the prophylactic exclusion of the evidence as dictated by *Miranda, Escobedo,* and *Neely*[10] is still required.[11]

The opinion of the Court of Appeals is affirmed.

HOWELL, J., dissenting.

I dissent. I do not see any difference between the situation in this case and one where the police secure information given voluntarily to them but without a prior *Miranda* warning. In my opinion, the court is presented with a choice between the prophylactic effect of punishing impermissible police conduct by prohibiting the admission of any evidence whether substantive or impeachment, or a license to the defendant to commit perjury. The choice made by the United

---

[9] The opinion in *Harris* makes no mention of any request by Harris for a lawyer, and the opinion is interpreted as if there was none. However, see comment, 80 Yale L J 1198, 1200 (1971), which indicates that he may have asked to see a lawyer but he would be satisfied to see one "tomorrow."

[10] State v. Neely, 239 Or 487, 395 P2d 557, 398 P2d 482 (1965).

[11] *See* United States ex rel Wright v. LaVallee, 471 F2d 123 (2d Cir. 1972), for a contrary result though the rationale applied by us in the present opinion was not discussed.

States Supreme Court was aptly expressed by Mr. Chief Justice Burger in *Harris v. New York,* 401 US 222, 91 S Ct 643, 28 L Ed 2d 1 (1971):

"* * * The impeachment process here undoubtedly provided valuable aid to the jury in assessing petitioner's credibility, and the benefits of this process should not be lost, in our view, because of the speculative possibility that impermissible police conduct will be encouraged thereby. Assuming that the exclusionary rule has a deterrent effect on proscribed police conduct, sufficient deterrence flows when the evidence in question is made unavailable to the prosecution in its case in chief.

"Every criminal defendant is privileged to testify in his own defense, or to refuse to do so. But that privilege cannot be construed to include the right to commit perjury. * * *

"The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. * * *" 401 US at 225, 226.

No *Miranda* warning was given in *Harris.* In the instant case, the warning was given, but apparently the interrogation continued after the defendant stated that he wanted to see a lawyer. The result should be the same as in *Harris*: the state is precluded from offering that evidence as part of its case in chief, and the defendant is precluded from using the *Miranda* shield to commit perjury.

In *United States ex rel. Wright v. LaVallee,* 471 F2d 123 (2nd Cir 1972), the defendant contended that a statement elicited by a police officer after defendant had requested and been denied counsel was inadmissible as a violation of *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964). The court held that

as the statement was used only on cross examination for impeachment purposes it was admissible under the *Harris* decision.

In *United States ex rel. Padgett v. Russell,* 332 F Supp 41 (DC ED Pa 1971), the court held that even if the interrogation of the defendant violated *Escobedo* standards for being obtained in the absence of counsel, the admission of the evidence for impeachment purposes did not violate constitutional standards. The court stated:

"* * * [A]ssuming that the interrogation was conducted under circumstances violative of *Escobedo,* Harris v. New York, * * * is clearly dispositive of petitioner's claim. *Harris* limited *Miranda,* and by necessary implication *Escobedo,* in holding that a statement obtained through improper custodial interrogation could be introduced to impeach the credibility of the defendant, though not to establish the prosecution's case in chief. * * *"

The same result was reached by the Supreme Court of North Carolina in *State v. Bryant,* 280 NC 551, 187 SE2d 111 (1972), where the defendant had been given the *Miranda* warning, but had not waived his right to counsel. The court found that *Harris v. New York,* supra, permitted the statements to be used for impeachment purposes.

I would overrule our decision in *State v. Brewton,* 247 Or 241, 422 P2d 581 (1967), and reverse.

TONGUE, J., and BRYSON, J., join in this dissent.