Argued April 18, affirmed May 28, 1974

STATE OF OREGON, *Respondent,* *v.* ANITA
WILLIAMS (No. C-73-08-2416 Cr), *Appellant.*

522 P2d 1213

*Kevin P. O'Connell,* Portland, argued the cause for appellant. With him on the brief were O'Connell, Goyak & Haugh, P.C., Portland.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

Defendant was arrested on a prostitution charge. While she was being taken to jail, officers searched her purse and seized a handgun and a small amount of heroin. The gun was in plain sight as soon as the purse was opened. The heroin was inside a folded dollar bill that was inside a zippered interior compartment in the purse. She was charged with prostitution, carrying a concealed weapon and criminal activity in drugs. She was convicted on the weapon and drug charges; the prostitution charge was dismissed. She appeals, contending the handgun and heroin were illegally seized.

Defendant argues that *State v. Florance,* 15 Or App 118, 515 P2d 195 (1973), Sup Ct *review allowed* (1974), is controlling. However, we disagree with defendant that this case is controlled by *Florance.* Here, the arresting officer testified he opened defendant's purse to search for weapons. This is permitted incident to an arrest. *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962); *State v. Florance, supra.* The officer immediately saw

a gun. The seizure of the gun was lawful, and defendant does not here claim the contrary.

■ Defendant instead complains about the officer's act of continuing to search through the purse, i.e., opening the zippered interior compartment that resulted in the seizure of the heroin. The officer testified he continued to search the purse after seizing the gun because they were looking for other weapons, such as razor blades or a small knife; the officer said it was common, in his experience, for prostitutes to carry such small weapons. This justified ·opening the zippered interior compartment.

■ Upon opening the interior compartment, the officer observed a dollar bill folded or rolled in what seemed like a very unusual manner. The officer's suspicions were aroused because it was also common, in his experience, for prostitutes to carry illegal drugs, and because he had previously seen illegal drugs in powder form carried inside folded paper money. These suspicions prompted the officer to squeeze the dollar bill in defendant's purse. He could tell by feel that the bill was folded around some kind of powder. Given these circumstances, at that point the officer had probable cause to believe the powder was an illegal drug. *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). The seizure of the substance, which proved to be heroin, was lawful.

Affirmed.

SCHWAB, C. J., specially concurring.

I concur with the majority opinion. However, in view of the fact that the state argues in this, as it has in other cases, that *United States v. Edwards,* 415 US 800, 94 S Ct 1234, 39 L Ed 2d 771 (1974), *Gustaf-*

*son v. Florida,* 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973), and *United States v. Robinson,* 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), are contrary to *State v. Florance,* 15 Or App 118, 515 P2d 195 (1973), Sup Ct *review allowed* (1974), and are controlling, I think it advisable to discuss that issue.

The essence of our decision in *Florance* was that searches incident to arrest are subject to some limitations, and that inventory searches when an arrested person is placed in jail are likewise subject to limitations. The essence of the state's argument is that searches incident to custody, that is, both searches incident to arrest and inventory searches of an arrestee should not be subject to any limitations.

In order to precisely identify what is here involved, I first note what is not involved.

We are not dealing with a probable-cause search, that is, a search based on a well-warranted suspicion, *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). There are situations in which an officer will acquire information that furnishes probable cause to arrest and search. *Cupp v. Murphy,* 412 US 291, 93 S Ct 2000, 36 L Ed 2d 900 (1973); *State v. Murphy,* 2 Or App 251, 465 P2d 900, Sup Ct *review denied, cert denied* 400 US 944 (1970). As we said in *State v. Temple,* 7 Or App 91, 95, 488 P2d 1380, Sup Ct *review denied* (1971), *cert denied* 406 US 973 (1972), "* * * the same factors usually create sufficient probable cause to justify an arrest, a search, a seizure, or any combination thereof * * *." This is not such a situation. Here, the officer's probable cause to arrest defendant for prostitution cannot also be regarded as probable cause to search her purse simply

because the record establishes no basis for any belief that evidence of the crime of prostitution would be in the purse.

Probable-cause searches at the time of an arrest are sometimes loosely called searches incident to arrest. That is an unfortunate and potentially confusing label. As I use the term, "search incident to arrest," herein, I mean a search that is permissible at the time of an arrest even though there is no independent probable cause to search.

We are not here dealing with any claim that defendant's arrest was invalid. In order for there to be a valid search incident to arrest—as I have defined that term—there must be a valid arrest. If the arrest is invalid, a search incident thereto is also invalid. *State v. Rater,* 253 Or 109, 453 P2d 680 (1969); *State v. Roderick,* 243 Or 105, 412 P2d 17 (1966). By contrast, when there is probable cause to arrest and/or search, there need not be an arrest before there can be a search, *State v. Murphy,* supra; but as already noted, the search in this case cannot be sustained on a probable-cause basis.

Finally, we are not here dealing with any claim that the search exceeded the spatial limits of a search incident to arrest. *Chimel v. California,* 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969), holds that such a search must be spatially limited to the person of the arrestee and the area within his or her reach.

Against this background, the question presented is: When there has been a valid custodial arrest, but the police have no probable cause to search the arrestee, what is the permissible intensity of an ap-

propriately spatially limited search incident to the arrest?

A. The Federal Rule

The federal courts would hold that there is no limit on the permissible intensity of searches and seizures incident to arrest. *United States v. Edwards,* supra; *Gustafson v. Florida,* supra; *United States v. Robinson,* supra. *Robinson* holds that once a lawful custodial arrest has taken place a search incident to the arrest requires no further justification and can be of unlimited intensity. *Gustafson* holds that even though a police officer has no evidentiary or protective purpose for the search, a search incident to a valid custodial arrest is nevertheless permissible. *Edwards* holds that like searches incident to arrest, seizures incident to arrest are also unlimited; even "* * * without probable cause, the authorities were entitled at that point * * * [after an arrest] not only to search Edwards' clothing but also to take it from him and keep it in official custody * * *." 39 L Ed 2d at 776.

Under the federal rule, regardless of the nature of the offense that prompts a custodial arrest,[1] the arrestee is deemed to have forfeited all privacy rights. Everything in his possession can be thoroughly searched and taken from him, *Robinson, Gustafson,* and even his clothing can be taken from him, *Edwards.* Presumably, under the federal rule, the police can seize everything from an arrestee—even items of no possible

---

[1] The defendants in both Gustafson v. Florida, 414 US 260, 94 S Ct 488, 38 L Ed 2d 456 (1973), and United States v. Robinson, 414 US 218, 94 S Ct 467, 38 L Ed 2d 427 (1973), were arrested on traffic offenses: in *Robinson* for driving while his license was revoked; in *Gustafson* for driving without his license in his possession.

evidentiary value that could only be used to maximize the comfort of the arrestee, such as items customarily found in a woman's purse. With no motivation other than curiosity, or the awareness that if a person shucks enough oysters he will eventually find a pearl, the police could read through intensely personal items the arrestee had been carrying, such as a diary.[⊗] The unlimited intensity of a search incident to arrest would presumably authorize routine body cavity searches. And carried to its logical extreme, the federal rule would authorize the police to extract a blood sample from every arrestee, so long as medically acceptable procedures were used;[⊙] the blood samples could then be the basis of a charge such as criminal use of drugs.[⊕]

## B. The Oregon Rule

The decisions of the Oregon Supreme Court are not in accord with *Robinson, Gustafson* and *Edwards.* By contrast to the federal rule of unlimited intensity of a search incident to arrest, the Oregon decisions have consistently and repeatedly held that there are limits on the permissible intensity of a search incident to arrest.

The leading case is *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962). In that case, after stating, "In general, a mere exploratory search accompanied by an arrest upon some convenient charge is held bad * * *," 231 Or at 266, the Supreme Court stated five limita-

---

[⊗] *Cf.* State v. Hawkins, 255 Or 39, 463 P2d 858 (1970).

[⊙] *See,* Schmerber v. California, 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966); Rochin v. California, 342 US 165, 72 S Ct 205, 96 L Ed 183, 25 ALR2d 1396 (1952).

[⊕] ORS 167.217 (1): "A person commits the crime of criminal use of drugs if he knowingly uses or is under the influence of a narcotic or dangerous drug * * *."

tions on searches and seizures incident to arrest, four of which are:

"(1) *Purpose of the [search incident to] arrest exception.* Search and seizure contemporaneously with an arrest is the only exception to the constitutional requirement of a warrant prior to a search of one's home. The exception is necessary to secure the safety of the police and the custody of the prisoner * * *. It is also necessary to enable enforcement officers to gather the fruits of the crime, the implements thereof, and possibly to prevent the destruction of evidence thereof * * *. Properly employed, the exception is limited by the purposes for which it has been developed.

"(2) *Additional limitations.* There are other limitations intended to prevent the exception from becoming the rule. The search must be an incident of the arrest, i.e., close to the arrest both in time and in space, viz., in the physical area searched. The only practical test for reasonableness in relation to time and space is to examine the total factual situation in the light of the constitutional right of privacy. * * *

"(3) *Intensity of the search.* Even if a search is reasonable with reference to time and space, it may be held unreasonable if it is of undue intensity. The nature of the crime for which an arrest is made and the character of the articles seized should have a direct bearing upon the question of reasonableness. So, also, should the knowledge the police may have of the criminal record and habits of the suspect, if relevant under the facts of a given case. Thus, a search in connection with an arrest of an ex-convict for a murder may properly exceed the allowable intensity of a search in connection with a traffic offense. * * *

"* * * * *

"(5) *Articles subject to seizure.* Assuming that a given search was a lawful incident of an arrest, not unreasonable with reference to time or space,

and not disproportionately rigorous in the context of the crime, the suspect, and all the surrounding circumstances, the next inquiry has to do with the 'seizability' of objects discovered in such a search. Not all personal property is subject to seizure by police * * *." 231 Or at 266-69.

The last limitation mentioned by the court—the "seizability" of items—is a statutory limit, now expressed in ORS 133.535.[9]

The Supreme Court next repeated the notion that searches incident to arrest are limited in *State v. Krogness,* 238 Or 135, 144, 388 P2d 120, *cert denied* 377 US 992 (1964):

"As a general rule, the search must be reasonably related to the offense which prompts the arrest. The search may not, therefore, involve the luggage and other interior compartments of the vehicle merely because there has been a traffic arrest * * *."

A few months later, in *State v. Howell,* 238 Or 251, 393 P2d 158 (1964), the Supreme Court held a search that involved removing a wall panel in the defendant's apartment to be invalid as incident to his arrest. The court followed the statement in *Chinn* that the search incident-exception is limited by the pur-

---

[9] ORS 133.535 provides:

"The following are subject to search and seizure under ORS 133.525 to 133.703:

"(1) Evidence of or information concerning the commission of a criminal offense;

"(2) Contraband, the fruits of crime, or things otherwise criminally possessed;

"(3) Property that has been used, or is possessed for the purpose of being used, to commit or conceal the commission of an offense; and

"(4) A person for whose arrest there is probable cause or who is unlawfully held in concealment."

poses for which it has been developed, namely, searching for weapons, means of escape and destructible evidence:

"* * * There was no possible question of officer safety, a weapon could not have been concealed behind the panel and suddenly seized by defendant. In the small rooms occupied by defendant it would have been readily apparent that no other person was present who might have aided defendant in an attempt to escape. Defendant was incapable of destroying any evidence * * *." 238 Or at 254.[©]

Over the following years the Supreme Court continued to state that searches incident to arrest were not unlimited. *See, State v. Cole,* 252 Or 146, 448 P2d 523 (1968); *State v. Elk,* 249 Or 614, 439 P2d 1011 (1968); *State v. Dempster,* 248 Or 404, 434 P2d 746 (1967). The perhaps strongest expression of this rule was in *State v. O'Neal,* 251 Or 163, 444 P2d 951 (1968) —*O'Neal* is the one Oregon case that is most contrary to the federal cases, such as *Robinson,* discussed above. In *O'Neal* the defendant's wallet was searched incident to an arrest for minor traffic offenses. The Supreme Court held the search to be invalid:

"The justification for permitting a search incident to an arrest was stated by Mr. Justice Frankfurter in *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L ed 653 (1950). Although this was in a minority opinion, this statement is accepted as legal doctrine:

"'* * * In plain English, the right of search

---

[©] The same result—that the search was invalid—would probably be reached today on the facts of State v. Howell, 238 Or 251, 393 P2d 158 (1964), by invoking the spatial limit rule of Chimel v. California, 395 US 752, 89 S Ct 2034, 23 L Ed 2d 685 (1969). However, at the time *Howell* was decided the spatial limit rule was not in effect. Therefore, *Howell* can be read as standing for the limited intensity rule discussed above.

incident to arrest is merely one of those very narrow exceptions to the "guaranties and immunities which we had inherited from our English ancestors, and which had from time immemorial been subject to certain well-recognized exceptions arising from the necessities of the case." * * *

" '* * * Its basic roots, however, lie in necessity. What is the necessity? Why is search of the arrested person permitted? For two reasons: first, in order to protect the arresting officer and to deprive the prisoner of potential means of escape, * * * and, secondly, to avoid destruction of evidence by the arrested person. * * *.' 399 US at 71-72.

"Stated more succinctly, a search incident to arrest is justified only for the safety of the arresting officer, or because it has relevance to the crime for which the accused is arrested * * *.

"The search of the wallet obviously had nothing to do with the officers' safety. The defendant testified that the officers 'patted him down' before placing him in the police car. The officers did not remember whether they had or had not. In any event, it is difficult to see how defendant's wallet could have reasonably been believed to have contained a weapon.

"We also conclude that the search could not reasonably relate to the offenses for which the defendant was arrested or cited. We can conceive of nothing that could be found in defendant's wallet that would be evidence of driving without a license plate, driving with an expired plate, or driving without a valid operator's license." 251 Or at 165-66.

The capstone of this series of decisions of the Oregon Supreme Court is *State v. Cloman,* 254 Or 1, 456 P2d 67 (1969). In discussing the rules governing searches incident to arrest, the court stated:

"The safeguard against an unreasonable search

is the requirement that the search 'must be reasonably related to the offense which prompts the arrest.' *State v. O'Neal,* supra (251 Or at 166). A search of a wallet or a car trunk has no relevancy to an arrest for an expired operator's license or to an arrest for exceeding the speed limit. *State v. O'Neal,* supra (251 Or at 166); *State v. Krogness,* supra (238 Or at 144). A search of a glove compartment is reasonably related to an arrest for burglary in which narcotics were stolen. *State v. McKenzie,* supra (232 Or 633). A search of the trunk of a car in which the defendant is arrested is reasonably related to an arrest for burglary or similar offense involving theft.

"The searched person's privacy has already been partially invaded by the arrest; therefore, the search does not have the personal impact that it otherwise might have. To limit this impact, the right to search is limited in time and space. *State v. Chinn,* supra (231 Or 259). Frequently, the tools or fruits of the crime are discovered by a search of the person, car, room, or office of the person arrested. For these reasons a lesser standard than probable cause,—the standard of relevancy between the search and the arrest—is sufficient." 254 Or at 15-16.

The Oregon Supreme Court has stated its reasons for rejecting unlimited searches and seizures incident to arrest. One reason is the reluctance to authorize exploratory fishing expeditions:

"If the rule were otherwise, an officer who desired to inculpate an arrested person in another crime, could seize everything in such person's immediate possession and control upon the prospect that on further investigation some of it might prove to have been stolen or to be contraband. It would open the door to complete temporary confiscation of all an arrested person's property which was in his immediate possession and control at the time of

his arrest for the purpose of a minute examination of it in an effort to connect him with another crime. Such a practice would be as much an exploratory seizure as one made upon an arrest for which no probable cause existed * * *." *State v. Elkins,* 245 Or 279, 287-88, 422 P2d 250 (1966).

Another reason is the increased danger of pretext arrests:

"* * * If indiscriminate seizures are allowed upon lawful arrest, it will tend to promote more arrests upon tenuous or fanciful grounds." *State v. Elkins,* supra, 245 Or at 290.

C. The Federal and Oregon Rules Contrasted

The present federal rule is simple and mechanical: there are no limits on searches or seizures incident to a lawful custodial arrest. E.g., *United States v. Robinson,* supra. By contrast, the Oregon Supreme Court has consistently held that searches and seizures incident to a lawful custodial arrest are subject to limits, although the phraseology of those limits has varied somewhat from case to case. E.g., *State v. Cloman,* supra; *State v. O'Neal,* supra; *State v. Elkins,* supra.

Choice between these two different approaches involves answering a fundamental policy question: Does a person taken into police custody continue to have any privacy rights as to the things in his immediate possession? Federal cases like *Robinson* say no. Oregon cases like *O'Neal* say yes.

The state argues that we should adopt *Robinson* and reject the notion that arrested persons continue to have any privacy rights. The simple answer is that the state's argument is presented in the wrong

court. I believe we are bound by the decisions of the Oregon Supreme Court for the following reasons:

1. The earliest decisions of the Oregon Supreme Court dealing with searches and seizures incident to arrest cite and apply only the search and seizure provisions of the Oregon Constitution, Art I, § 9.[7] As recently as 1966 the Supreme Court seems to have relied primarily on the Oregon Constitution in a seizure-incident-to-arrest case, *State v. Elkins,* supra. And as recently as 1959 the Supreme Court relied exclusively on the Oregon Constitution in a search-incident-to-arrest case, *State v. Hoover,* 219 Or 288, 296, 347 P2d 69, 89 ALR2d 695 (1959). To the extent that Oregon law on this subject is based on the Oregon Constitution, federal cases interpreting the Fourth Amendment to the United States Constitution are irrelevant.[8]

2. Even if—as does not appear to be the case—the Oregon Supreme Court's decisions were based solely on the Fourth Amendment, when the Oregon Supreme Court's last word on an issue is more favorable to a criminal defendant than the United States Supreme Court's last word, we have made it our practice to follow the last word of the Oregon Supreme Court, leaving to that court the decision about whether to adopt the less favorable position adopted by the United States Supreme Court. *State v. Haas,* 13 Or App 368, 510 P2d 852 (1973), *aff'd* 267 Or 489, 517 P2d

---

[7] E.g., State v. Rosser, 162 Or 293, 349, 86 P2d 441, 87 P2d 783, 91 P2d 295 (1939); State v. Christensen, 151 Or 529, 531, 51 P2d 835 (1935); State v. Walker, 135 Or 680, 683, 296 P 850 (1931); State v. Lee, 120 Or 643, 647-49, 253 P 533 (1927).

[8] The Oregon Supreme Court has interpreted language in the Oregon Constitution differently than the United States Supreme Court has interpreted comparable language in the United States Constitution. State v. Brown, 262 Or 442, 497 P2d 1191 (1972), is the best recent example.

671 (1973); *State v. Evans,* 2 Or App 441, 468 P2d 657 (1970), *reversed* 258 Or 437, 483 P2d 1300 (1971).

3. Moreover, continuing to assume *arguendo* that the Oregon Supreme Court's search and seizure decisions are based solely on the Fourth Amendment, it does not follow that that court would necessarily join in adopting the *Robinson* view of the Fourth Amendment, because the Oregon Supreme Court has twice recently stated that it is free to adopt a view of federal constitutional rights that is more favorable to a criminal defendant than the view of the United States Supreme Court. *State v. McManus,* 267 Or 238, 249, 517 P2d 250 (1973); *State v. Evans,* 258 Or 437, 483 P2d 1300 (1971). I note in passing that the United States Supreme Court has used language which is arguably to the contrary:

> "Our holding, of course, does not affect the State's power to impose higher standards on searches and seizures than required by the Federal Constitution if it chooses to do so. *And when such state standards alone have been violated,* the State is free, without review by us, to apply its own state harmless-error rule to such errors of state law \* \* \*." *Cooper v. California,* 386 US 58, 87 S Ct 788, 17 L Ed 2d 730, *reh and modif den* 386 US 988 (1967). (Emphasis supplied.)

4. Finally, it is impossible for me to comprehend how *Robinson* can coexist with *State v. Keller,* 265 Or 622, 510 P2d 568 (1973), in the same jurisdiction. *Keller* held that a warrantless inventory search of an impounded automobile is limited to the extent that it cannot include opening closed containers. How can it be said that privacy rights do not exist as to a seized, i.e., arrested, person, but priv-

acy rights do exist as to a seized, i.e., impounded, vehicle?

I am convinced that only the Oregon Supreme Court can determine whether the search and seizure doctrine enunciated in *Gustafson, Robinson* and *Edwards* shall result in a change in the Oregon search and seizure law as heretofore enunciated by the Oregon Supreme Court.