STATE OF WEST VIRGINIA

*v.*

JAMES D. VANCE

(No. 14362)

Decided December 18, 1981.

*E. Dennis White, Jr., Bernard T. Nibert, II, White, Wolpert & Nibert,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Silas B. Taylor,* Assistant Attorney General, for defendant in error.

MCGRAW, JUSTICE:

James D. Vance appeals his robbery conviction in the Circuit Court of Putnam County. He alleges four principal errors: (1) the circuit court erred by permitting the State to impeach the appellant's testimony with inculpatory statements made to police officers without a valid waiver of his right to counsel; (2) the circuit court erred by failing to grant the appellant's motion for a continuance; (3) the circuit court erred in giving certain of the State's instructions and refusing to give certain instructions submitted by the appellant; and (4) the circuit court erred in refusing to exclude from evidence certain items taken after an

allegedly illegal search.[1] A majority of this Court finds no merit in these contentions, and therefore affirms the appellant's conviction.

The factual background of this case is relatively uncomplicated and may be briefly related. In the early morning hours of March 30, 1977, Mrs. Louise M. Witt was severely beaten and robbed at her home by a young man driving a gold-colored Pinto automobile. Various items were stolen, including rings, watches, cash, and a set of Craeger mag wheels belonging to her son. Both Mrs. Witt and a passerby were able to describe the assailant's automobile to the police. Later that day, after learning that the appellant owned such an automobile, officials went to the Vance home to question him about the robbery. In the driveway they discovered a gold Pinto automobile matching the description given by Mrs. Witt and the other witness. Lying next to the car was a Craeger mag wheel. Inside the car, the officers noticed three other mag wheels. The appellant's younger brother permitted the officers to enter the house, where they found the appellant asleep on the couch. The officers woke the appellant and requested that he answer certain questions. After answering the officers' questions, the appellant was searched. Various items were discovered on his person which later were identified as the property of Mrs. Witt. The appellant was then arrested and subsequently taken before a Putnam County magistrate, where he signed an indigent form and checked the box indicating that he desired the appointment of counsel. Before Vance was taken to the magistrate's office, the officers confiscated the mag wheels and other items as evidence. After Vance's appearance before the magistrate, he was taken to jail in lieu of bond.

---

[1] Other assignments of error raised by the appellant are: (1) the trial court erred by failing to strike the testimony of the State's expert witness; (2) the cumulative effect of prejudicial remarks by the prosecutor constituted reversible error, and (3) the trial court erred by permitting the State to impeach the appellant's testimony with statements made by the appellant during a pre-trial psychiatric examination. Upon careful review we find that these contentions are not fairly raised by the record before this Court, and therefore we are unable to address their merits.

At the jail one of the arresting officers questioned the appellant concerning the alleged offense. In response to the officer's questions the appellant made a brief inculpatory statement.[2] The next morning, at an interrogation session the State claim was initiated by the appellant, a more detailed confession was taken.[3] Both statements were transcribed on a printed form which indicated that they were voluntary and that the appellant had been advised of his rights prior to interrogation.

Because both statements were taken after the appellant had requested counsel, but before counsel had been appointed, the trial court prohibited their use in the State's case in chief. However, when the appellant took the stand to testify in his own behalf the State attempted to use the second statement during cross-examination to impeach his testimony. At an *in camera* hearing held to determine the permissibility of using the statement for this purpose,

[2] The entire text of this statement is: "I went to John Bill Witt to see about buying some tires. I remember hitting somebody." Transcript p. 265.

[3] The text of the second statement is:

"I remember standing at the door and the lights came on. It was the outside light. I jerked the storm door open. I have a sore place on my left hand where I hurt it opening the door. Then I went in. Before I went in I asked Mrs. Witt if John Bill was home. As I went in the door I hit her with my fist. I asked her if she had any money. She told me it was in her purse. I went to the bedroom and got the money out of the purse. I asked her if she had any more money. She said there was some money in a bowl in the kitchen. I got it. I asked her if there was anything else in the house that was valuable. She told me about the rings. She said they were under the bed. I went and got the rings. Then I went outside to the metal building. Mrs. Witt was lying on the kitchen floor at this time. I got four wheels and tires out of the building. I put the wheels and tires in my car. The lug bolts were in a metal box. I put them in my car, too. Then I left. When I got home, mom asked me what kind of trouble I was in. I told her I didn't remember.

"Q. What kind of car do you own?
"A. I have a '72 Pinto. It's gold.
"Q. What kind of license plates is [sic] on your Pinto?
"A. It has temporary tags.
"Q. Where did you buy the Pinto?
"A. Cargill Ford." Transcript pp. 273-274.

the appellant admitted that he signed the statement, but asserted that the text of the statement was supplied by the interrogating officer, and that he signed the statement only after he was informed that it was necessary to make a statement before he could obtain bail. The police officers present when the statement was taken denied these allegations of improper conduct. At the conclusion of the *in camera* hearing the trial court found the statement to be voluntary and therefore, in accordance with the United States Supreme Court decisions in *Harris v. New York*, 401 U.S 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), and *Oregon v. Hass*, 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), permitted the State to use it to impeach the appellant's testimony. The appellant contends that the statement was involuntary and coerced and that it was error to permit the State to impeach him with it.

## I.

The trial court correctly ruled that the inculpatory statements were inadmissible in the State's case in chief. When law enforcement personnel interrogate an accused after he has indicated a desire to be represented by counsel, and a confession is elicited as a result of the interrogation, the confession is inadmissible absent a valid waiver of the right to counsel. *See State v. Bradley*, 163 W. Va. 148, 255 S.E.2d 356 (1979); *State v. McNeal*, 162 W. Va. 550, 251 S.E.2d 484 (1978). However, the United States Supreme Court has held that a statement taken without a valid waiver of an accused's right to counsel may nevertheless be used to impeach the credibility of an accused's testimony at trial if the statement is found to be voluntary. *Oregon v. Hass, supra; Harris v. New York, supra*.

In *Harris v. New York, supra*, the defendant was charged with two counts of selling narcotics to an undercover police officer. At trial the defendant took the stand in his own defense and denied the charges. On cross-examination the prosecution used a statement allegedly made by the defendant immediately after his arrest to impeach his testimony. The trial court instructed the jury that the

statement could be used only on the issue of credibility and not as evidence of guilt. The jury returned a verdict of guilty.

The prosecution did not use the statements in its case in chief, conceding that they were inadmissible under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because the defendant was not advised of his right to counsel. On appeal the United States Supreme Court held that statements inadmissible against a defendant in the prosecution's case in chief because of the lack of procedural safeguards required by *Miranda*, may, if their trustworthiness satisfies legal standards, be used for impeachment purposes to attack the credibility of a defendant's testimony, and affirmed the conviction.

In *Oregon v. Hass, supra,* a burglary suspect was given full *Miranda* warnings, which he accepted. The police then questioned him about the burglary and the suspect gave them inculpatory information. He was then taken in a police car to locate some of the stolen goods. On the way the suspect told the police that he would like to telephone his lawyer. The police told him he could do so when they reached the police station. Thereafter the suspect gave further inculpatory information to the police. At trial Hass took the stand and denied his guilt. In rebuttal the prosecution called the police officer who had questioned Hass. During his testimony the inculpatory statements made by Hass after his request for counsel were elicited. The trial court gave a cautionary instruction regarding this testimony. The jury returned a verdict of guilty.

The Oregon Court of Appeals, relying upon a previous Oregon decision, reversed on the ground that Hass' statements were improperly used to impeach his testimony. 13 Or. App. 368, 510 P.2d 852 (1973). The Oregon Supreme Court affirmed the court of appeals' decision, reasoning that the police would not be deterred from improper conduct if the State is permitted to use statements taken in violation of an accused's constitutional rights to impeach his trial testimony. 267 Or. 489, 517 P.2d 671 (1973). On appeal, the United States Supreme Court relying upon

*Harris v. New York, supra,* reversed, holding that voluntary statements made by Hass after requesting a lawyer, could be used to impeach his testimony.

We note initially that in neither *Harris* nor *Hass* did the defendant make an assertion that the statements used to impeach his testimony were involuntary or coerced, as the appellant does in this case. However, the trial court found that the appellant's statements were voluntary, and its decision regarding the voluntariness of the appellant's confession will not be disturbed unless it is shown to be plainly wrong or clearly against the weight of the evidence. Syllabus Point 3, *State v. Vance,* 162 W. Va. 467, 250 S.E.2d 146 (1978).

The majority of this Court adopted the rules announced in *Oregon v. Hass, supra,* and *Harris v. New York, supra,* in the recent case of *State v. Goodmon,* ____ W. Va. ____, 290 S.E.2d 260 (1982). In *Goodmon* the majority held that "[w]here a person who has been accused of committing a crime makes a voluntary statement that is inadmissible as evidence in the State's case in chief because the statement was made after the accused had requested a lawyer, the statement may be admissible solely for impeachment purposes when the accused takes the stand at his trial and offers testimony contradicting the prior voluntary statement knowing that such prior voluntary statement is inadmissible as evidence in the State's case in chief." Syllabus Point 4, *State v. Goodmon, supra.*

While all of the members of this Court do not agree with the reasoning of *Harris v. New York, supra,* nor the rule adopted in *Goodmon, supra,*[4] we are bound by the view of

---

[4] The author of this opinion and Chief Justice Harshbarger do not concur with the holding of the majority of this Court on this issue. They believe that under article 3, sections 5 and 14 of the West Virginia Constitution, an incriminating statement taken without a valid waiver of an accused's right to counsel should not be used at trial for any purpose, irrespective of the trial court's determination that the statement was voluntary. *See State v. Bradley,* 163 W. Va. 148, 255 S.E.2d 356 (1979); *State v. McNeal,* 162 W. Va. 550, 251 S.E.2d 484 (1978). *See also Harris v. New York, supra* (Brennan J., dissent-

the majority of this Court. That being so, it was not error for the trial court to permit the use of the appellant's statements for the purpose of impeaching his testimony.

## II.

The appellant also assigns as error the denial of his motion for a continuance based on the grounds of the absence of a material witness, the need for additional psychiatric testing, and the failure to timely receive transcripts of pre-trial motion hearings. We find these contentions to be without merit.

To warrant a continuance on the basis of the absence of a material witness, it is necessary to show the use of due diligence to procure the attendance of the witness and also the materiality and importance of his evidence to the issues to be tried. *State v. Burdette*, 135 W. Va. 312, 63 S.E.2d 69 (1951). If the facts upon which the motion for continuance is based are not before the court, the motion must be supported by a sufficient affidavit showing such facts. *Davis v. Walker*, 7 W. Va. 447 (1874). Mere conclusionary statements by the affiant, without more, are not sufficient. *See State v. Whitecotton*, 101 W. Va. 492, 133 S.E. 106 (1928). "A motion for a continuance based on the absence of a material witness is addressed to the sound discretion of the trial court, and its ruling on such motion will not be disturbed unless it is clearly wrong and it appears that such discretion has been abused." Syllabus Point 1, *State v. Chafin*, 156 W. Va. 264, 192 S.E.2d 728 (1972). In this case, the appellant relied merely upon the bald assertion that a material witness was missing to support his motion for continuance. The trial court's ruling denying his motion therefore cannot be said to be clearly wrong, or to constitute an abuse of discretion.

The same reasons are applicable to the motion for a continuance in order to conduct further psychiatric testing of the appellant. No affidavit was filed in support of this motion, and there was no indication of the need for

ing); *People v. Disbrow*, 16 Cal. 3d 101, 127 Cal. Rptr. 360, 545 P.2d 272 (1976); *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1972).

such examination. "Evidence that such examination is needed must be presented to the trial court before the granting of such motion is justified." Syllabus Point 2, *State v. Chafin, supra.*

Likewise, it was not an abuse of discretion for the trial court to refuse the motion for a continuance because defense counsel did not receive the transcripts of *in camera* hearings until the morning of the trial. Defense counsel had not previously filed a timely motion to continue on this basis, so it appears that they were prepared to go to trial without these transcripts. The trial court was therefore correct in overruling the motion.

## III.

The appellant alleges that it was error to give certain of the State's instructions and to refuse certain defense instructions. Specifically, the appellant complains that State's instruction number one, an instruction listing the elements necessary to convict the appellant of robbery, did not sufficiently incorporate the element of intent. Upon inspection of the record, we find the instruction clearly lacking in this respect.[5] However, instructions

---

[5] State's instruction number one, which is suspect under *State v. Harless,* \_\_\_ W. Va. \_\_\_, 285 S.E.2d 461 (1981), reads as follows:

The offense charged in the indictment in this case is robbery. One of two verdicts may be returned by you under the indictment. They are (1) guilty; (2) not guilty.

Robbery is committed when one person takes or attempts to take from the person or from the presence of another person any property or money or any other thing of value belonging to, or in the care, custody, control, management or possession of such other person by partial strangulation or suffocation, or by striking or beating, or by other violence to the person or by the threat or presenting of firearms or other deadly weapon or instrumentality.

The burden is on the State to prove the guilt of the Defendant beyond a reasonable doubt and the Defendant, James D. Vance, is not required to prove himself innocent. He is presumed by the law to be innocent of this charge and this presumption remains with him throughout the entire trial.

Before James D. Vance can be convicted of robbery, the State of West Virginia must overcome the presumption that he is innocent

must be viewed as a whole. "The giving of a confusing or incomplete instruction does not constitute reversible error when a reading and consideration of the instructions as a whole cure any defects in the complained of instructions." Syllabus Point 4, *State v. Stone* ____ W. Va. ____, 268 S.E.2d 50 (1980). "When instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing a jury verdict." Syllabus Point 6, *State v. Milam*, 159 W. Va. 691, 226 S.E.2d 433 (1976). The element of intent was sufficiently supplied in this case by

---

and prove to the satisfaction of the jury beyond a reasonable doubt that:

1. The defendant, James D. Vance,
2. in Putnam County, West Virginia,
3. on or about the 30th day of March, 1977,
4. did take
5. from the person of Louise M. Witt
6. one white gold seven-diamond cluster ring, one white gold six clustered ring, one Elgin wrist watch, one woman's wrist watch, four Cragar mag wheels, one metal toolbox, One Hundred Thirty Dollars in United States Currency,
7. of some value,
8. (a) belonging to and
   (b) in the care,
   (c) custody, and
   (d) control of
9. Louise M. Witt
10. (a) by
    (b) striking
    (c) beating
    (d) upon
11. Louise M. Witt.

If after impationally [*sic*] considering, weighing, and comparing all the evidence, both that of the State and that of the Defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of robbery, you may find James D. Vance guilty as charged in the indictment.

If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of robbery, you shall find James D. Vance not guilty." Transcript pp. 1146-1148.

later instructions,[6] and therefore the lack of discussion of the element of intent in State's instruction number one does not constitute reversible error.

The defendant also complains that the State's instruction number one failed to incorporate the lesser included offenses of robbery, such as unlawful assault. He further complains of the circuit court's failure to grant his instructions numbered 17 and 18, which would have permitted the jury to return a verdict of unlawful assault. The test for determining whether a particular offense is a lesser included offense is that the lesser offense must be such that it is impossible to commit the greater offense without having first committed the lesser offense. Before a lesser offense can be said to contribute a necessary part of a greater offense, all the legal ingredients of the corpus delicti of the lesser offense must be included in the elements of the greater offense. If an element necessary to

---

[6] For example:

DEFENDANT'S INSTRUCTION NO.15

The Court instructs the jury that the crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent, the State must prove beyond a reasonable doubt that the defendant knowingly did an act which the law forbids, purposely intending to violate the law. Such intent may be determined from all the facts and circumstances surrounding the case.

\* \* \*

DEFENDANT'S INSTRUCTION NO. 16

Although intoxication or drunkenness will never provide a legal excuse for a commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the finding of specific intent. So evidence that a defendant acted while in a state of intoxication is to be considered in determining whether or not the defendant acted with specific intent, as charged.

If the evidence in the case leaves the jury with a reasonable doubt whether, because of the degree of intoxication, or the use of medication or a combination of both, the mind of the accused was capable of forming, or did form, specific intent to commit the crime charged, the jury should acquit the accused. Transcript pp. 1152-1153.

establish the corpus delicti of the lesser offense is irrelevant to the proof of the greater offense, the lesser cannot be held to be a necessarily included offense. *State v. Daggett*, ___ W. Va. ___, 280 S.E.2d 545 (1981).

The crime of unlawful assault requires a specific "intent to maim, disfigure, disable or kill. . . ." *W. Va. Code* § 61-2-9 (Cum. Supp. 1981). Such an intent to injure is not a necessary element of robbery. *W. Va. Code* § 61-2-12 (1977 Replacement Vol.). Therefore since an element necessary to prove unlawful assault is irrelevant to the proof of robbery, unlawful assault is not a necessary part of robbery and the trial court properly refused appellant's instructions numbered 17 and 18, and correctly granted State's instruction number one.

It was clearly not error for the trial court to refuse the defendant's instruction number five which instructs the jury that to find the defendant guilty, the State must prove that the defendant must not have been so drunk, or otherwise incapacitated, as to have been incapable of formulating an intent to steal. Voluntary drunkenness will not ordinarily excuse a crime. Syllabus Point 8, *State v. Bailey*, 159 W. Va. 167, 220 S.E.2d 432 (1975).

### IV.

Finally, the appellant contends that the circuit court erred in refusing to exclude from evidence certain items found in and about the appellant's car and on his person before his arrest. The facts of this case reveal that the officers entered on the property of the appellant's parents for the purpose of locating and questioning the appellant. There is conflicting testimony as to whether some of the stolen property was lying on the ground beside the car or whether it was all contained inside the vehicle. However, the facts of this case are such that it really makes no difference. The discovery and seizure of the stolen goods was proper under the plain view doctrine adopted in *State v. Moore*, ___ W. Va. ___, 272 S.E.2d 804 (1980). "A warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: (1)

the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legitimate right to be where they are when they make the plain sight observation, and (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, instrumentalities or evidence of crime." Syllabus Point 7, *State v. Moore, supra*. These requirements were met and consequently the admission into evidence of this matter was also proper.

For the foregoing reasons, the judgment of the Circuit Court of Putnam County is affirmed.

*Affirmed.*