Argued and submitted April 8, affirmed July 9, petition for review denied November 6, 2014 (356 Or 510)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## ANTONIO PANIAGUA-MONTES,
*Defendant-Appellant.*

Marion County Circuit Court
10C41248; A151528

330 P3d 1250

Wayne Mackeson argued the cause for appellant. With him on the brief were Kelly Jaske and Wayne Mackeson, P.C.

Jennifer S. Lloyd, Attorney-in-Charge, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Janet A. Klapstein, Senior Assistant Attorney General.

Before Sercombe, Presiding Judge, and Hadlock, Judge, and Tookey, Judge.

TOOKEY, J.

**TOOKEY, J.**

Defendant appeals, challenging his convictions for four counts of sexual abuse in the first degree, ORS 163.427. We reject without discussion defendant's first and third assignments of error. We write only to address defendant's second assignment of error, in which he argues that the trial court improperly excluded the testimony of two witnesses as alibi evidence under ORS 135.455.[1] We agree with defendant that the trial court erred in excluding that evidence, but we conclude that the error was harmless. Accordingly, we affirm.

The record discloses the following facts. In 2007, 2008, and 2009, the victim, J, and her family visited the grandmother's house on weekends. Members of J's extended family lived at the grandmother's house, including defendant, J's aunt (defendant's wife), J's uncle, and J's cousins. J and her brothers sometimes spent the night at their grandmother's house, and J slept with her grandmother in her grandmother's bed.

In 2009, J's mother talked to J and her brothers about "good touch/bad touch" during a family dinner, and J disclosed that she was being touched by defendant. J was interviewed at Liberty House, a child abuse assessment center. She told the interviewer that, when her grandmother went to work in the mornings, defendant would sometimes "get into the bed and start touching her *** pretty much everywhere[.]" Defendant was later indicted on four counts of first-degree sexual abuse based on acts occurring "on or between January 1, 2006 to September 30, 2009[.]"

---

[1] ORS 135.455 provides:

"(1) If the defendant in a criminal action proposes to rely in any way on alibi evidence, the defendant shall, not less than five days before the trial of the cause, file and serve upon the district attorney a written notice of the purpose to offer such evidence, which notice shall state specifically the place or places where the defendant claims to have been at the time or times of the alleged offense together with the name and residence or business address of each witness upon whom the defendant intends to rely for alibi evidence. If the defendant fails to file and serve such notice, the defendant shall not be permitted to introduce alibi evidence at the trial of the cause unless the court for good cause orders otherwise.

"(2) As used in this section 'alibi evidence' means evidence that the defendant in a criminal action was, at the time of commission of the alleged offense, at a place other than the place where such offense was committed."

At defendant's bench trial, J testified that she and her brothers spent the night at her grandmother's house about 10 times each year, and that the touching began when she was around eight years old. The touching occurred "[a] lot" in her grandmother's room—more than five times; she would wake up "in the middle of the night or at like 6:00 [a.m.] or something because [her grandmother] would leave at 5:00 [a.m.] to work," and she would see defendant standing in front of the bed, watching her. Defendant would then lie down on top of J and touch her private areas; he rubbed her breasts and genital area on top of and under her clothes. J's aunt would "be asleep" and would not get up until later on—"[a] couple hours later." J also testified that the touching happened at other times and in other rooms: once, while family members were at the airport and once, while J was watching television.

Other witnesses were called to testify at trial, including the grandmother and aunt. According to defense counsel's offer of proof, the grandmother would have testified:

"that each time that [J] would spend the night, that [J] would then go to work with [the grandmother], but she would also testify that defendant left at almost about the same time each morning that these incidents where [J] was at the house after having spent the night."

According to defense counsel's offer of proof, the aunt would have testified:

"that [defendant] would rise very early in the morning and that he would leave the house and that he would leave typically before anyone else had gotten up. His pattern was to get up and make coffee and then leave, * * * and that around that same time that [the grandmother] would be getting up and shortly thereafter that [the grandmother] would leave, around the same time, if not after, [defendant]."

The prosecutor objected to that testimony as alibi evidence under ORS 135.455, arguing that it would "put the victim at a different place than the defendant" at the time that the crimes were committed, and that defendant was not permitted to submit that evidence because he did not provide advanced notice to the prosecutor that he intended to rely on alibi evidence at trial.

Defense counsel responded that the testimony was not alibi evidence because it was not being offered to prove *where* defendant went on any given date, but to prove that he had left, when he had left, and that he was not there. To support that argument, defense counsel cited *State v. Redwine*, 79 Or App 25, 29, 717 P2d 1239, *rev dismissed*, 302 Or 193 (1986), in which we "construe[d] the preclusion sanction of the alibi statute to exclude only evidence that a defendant was at a particular place other than the location of the crime."

The trial court ruled, in part:

> "[M]y ruling is that the definition of alibi evidence means evidence that the defendant in the criminal action was at the time of the commission of the alleged offense at a place other than the place where such offense was committed. In this particular case, I've had testimony that the only place this alleged offense could have occurred would have been at the grandmother's house, and the defense is seeking to introduce testimony that would place the defendant someplace other than grandma's house when some such offense was committed. So as I look at the definition of alibi evidence, clearly evidence as to his whereabouts other than at grandma's house at the time of the commission of the offense is alibi evidence."

After making that ruling, the trial court stated that *Redwine* had been overruled by *State v. Edgmand*, 306 Or 535, 541, 761 P2d 505 (1988), a case in which the Oregon Supreme Court concluded that ORS 135.455 does not "deny the defendant's right to describe her own movements at the time in question." *See id.* at 541-42 (Gillette, J., dissenting) ("The conclusion of the opinion for the majority is that the statute does not by its terms apply to alibi evidence offered by the defendant's own testimony.").

Pursuant to the trial court's ruling, the grandmother was not permitted to testify that "defendant left at almost about the same time each morning"; however, she did testify that J spent the night at her house only "two or maybe three times" in three years, that she took J to work at 5:30 a.m. on each of those mornings, and that J did not stay in the house with other adults while the grandmother

went to work. The aunt was not permitted to testify that defendant "would leave typically before anyone else had gotten up"; however, she did testify that J spent the night at the grandmother's house quite a few times in those years and that the grandmother would only sometimes take J to work in the mornings. The aunt also testified that she was in her room in the mornings and would not "get up" when the grandmother left for work. Defendant then testified that for three years, he left for work in the mornings "a few times right before [the grandmother] left for work or [at] exactly the same time and never slightly after[.]"

The trial court reviewed the evidence and found the grandmother's testimony to be not credible:

> "[I]t's clear to me that [the grandmother's] testimony is not credible, and I don't know whether that's because the testimony is simply based on a faulty memory or something more than that, but her testimony is totally inconsistent with every other witness who's testified, for instance the number of times that [J] spent at the house. The reason I bring that up is that in my view, had I allowed the offer of proof, I would not have put much weight on it because for the reasons I've just articulated, I don't think her testimony was credible."

Regarding the aunt's testimony, the trial court stated:

> "I have testimony of [the aunt] and like I said, the testimony of [the aunt] is even quite different than what [the grandmother] testified as to the number of times that [J] stayed there and whether [J] always went to work with [the grandmother] is quite different, and it was also clear from the testimony that I heard that it's feasible at least that [J's] explanation that [the aunt] would have been asleep when this occurred, I didn't hear anything that necessarily contradicted that."

The trial court concluded, "Having looked at the evidence as a whole, I am persuaded that [J's] testimony was credible, that her testimony was believable, in particular, although not required, to get to a proof beyond a reasonable doubt."

On appeal, defendant argues that the trial court erred when it excluded the grandmother's and aunt's testimony as alibi evidence under ORS 135.455. The state responds that "at

least some of the testimony was designed to show defendant was at work when the crimes occurred." The state also contends that *Redwine* is "at odds with the plain text of the alibi statute" and argues that it "may have been implicitly overruled in *State v. Edgmand.*" Finally, the state argues that the exclusion of the proffered evidence was harmless.

The issue in this case is whether the trial court erred when it excluded the grandmother's and aunt's testimony as alibi evidence within the meaning of ORS 135.455. That ruling involves interpretation of a statute, which we review for legal error. *See State v. Thompson*, 328 Or 248, 256, 971 P2d 879, *cert den*, 527 US 1042 (1999) ("A trial court's interpretation of a statute is reviewed for legal error.").

In *Redwine*, we "construe[d] the preclusion sanction of the alibi statute to exclude only evidence that a defendant was at *a particular place* other than the location of the crime." 79 Or App at 29 (emphasis added). We concluded that the defendant's testimony was not alibi evidence because it "did not relate to defendant being at a place other than the house where the crimes were committed[,]" but related only to "the time when he first arrived at the location of the crimes and what he observed." *Id*. at 28-29.

We pause to explain that *Redwine* was not, as the state argues, implicitly overruled by *Edgmand*; because *Redwine* and *Edgmand* involve different issues, *Redwine* is merely limited by *Edgmand*. The defendant in *Redwine* "[did] not challenge the specific ruling denying him the opportunity to present evidence of an alibi; rather he contend[ed] that application of the court's ruling was too broad." *Id*. at 28. Thus, in *Redwine*, we analyzed whether the defendant's testimony, in substance, constituted alibi evidence. In contrast, the defendant in *Edgmand* did not argue that her testimony, in substance, was not alibi evidence. Rather, the defendant asserted that ORS 135.455 could not be constitutionally "applied to restrict what a defendant who has not given prior notice may say in her own defense." *Edgmand*, 306 Or at 537. Thus, in *Edgmand*, the court did not analyze the *substance* of the defendant's testimony, but "*whose* testimony is included in the notice requirement." *Id*. at 541 (emphasis in original).

Read together, *Edgmand* and *Redwine* establish that we must apply ORS 135.445 as follows: Alibi evidence means evidence that a defendant was at a particular place other than the place of the alleged offense at the time of the alleged offense; if it is offered by a witness who is not the defendant, proper notice must be provided, and if proper notice is not provided, such evidence must be excluded unless the court for good cause orders otherwise. By contrast, evidence that merely establishes that a defendant was, at the time of the alleged offense, absent from the place where the alleged offense was committed is not alibi evidence and may not, accordingly, be excluded on the ground of failure to give the notice required for alibi evidence.

Relying on *Redwine*, we conclude that the grandmother's and aunt's testimony about defendant's morning routine was not alibi evidence as defined by ORS 135.455(2). As noted, the grandmother would have testified that defendant left the grandmother's house at about the same time that she left each morning, and the aunt would have testified that defendant typically left the grandmother's house in the mornings before anyone else had gotten up—that his pattern was to get up early, make coffee, and then leave. Even though that testimony implied that defendant was elsewhere, or typically was elsewhere, neither the grandmother nor aunt would have testified about where defendant actually went—that defendant was at work, at the store, or at some other specified place. Accordingly, their testimony was not offered to prove that defendant was at a particular place other than the place where the alleged offenses were committed. Rather, their testimony would establish only that at the time of the alleged offenses, defendant was absent, or typically absent, from the place where the alleged offenses were committed. Accordingly, the trial court erred by excluding the grandmother's and aunt's testimony about defendant's morning routine.

Having concluded that the trial court erred by excluding the grandmother's and aunt's testimony, we must now decide whether that error requires reversal or was harmless. Evidentiary error is reversible only if "it is prejudicial." *State v. Dimmick*, 248 Or App 167, 176, 273 P3d

212 (2012); *see also* OEC 103(1) ("Evidential error is not presumed to be prejudicial. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). To determine whether the error was harmless in this case, we review the record, in the light of the error at issue, and ask whether "there was little likelihood that the error affected the * * * verdict." *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003).

If not for the trial court's error, the grandmother would have testified that "defendant left at almost about the same time each morning that these incidents where [J] was at the house after having spent the night." That testimony goes to a central issue in the case because it would have supported defendant's testimony that defendant and the grandmother left for work at about the same time. *See Davis*, 336 Or at 34 (error less likely to be harmless where "the excluded evidence goes directly to the heart of defendant's factual theory of the case").

After reviewing the record, in the light of the error at issue, we nevertheless conclude that there was little likelihood that the trial court's error in excluding the grandmother's testimony affected the verdict. The trial court found the grandmother's testimony to be not credible because it conflicted with the testimony of other witnesses; indeed, the trial court expressly stated that it "would not have put much weight on" the grandmother's testimony even if it had allowed it to come in. Because the trial court would not have credited the grandmother's excluded testimony, her testimony had limited value, and its wrongful exclusion was harmless.

Finally, if not for the trial court's error, the aunt would have testified

> "that [defendant] would rise very early in the morning and that he would leave the house and that he would leave typically before anyone else had gotten up. His pattern was to get up and make coffee and then leave, * * * and that around that same time that [the grandmother] would be getting up and shortly thereafter that [the grandmother] would leave, around the same time, if not after, [defendant]."

That testimony also goes to a central issue in the case because it would have tended to support defendant's testimony that he left the house either at the same time or before the grandmother left for work.

After reviewing the record, in the light of the error at issue, we nevertheless conclude that there was little likelihood that the trial court's error in excluding the aunt's testimony affected the verdict. Because the aunt's testimony was offered to show defendant's morning routine or pattern, she could have testified only that defendant *typically* left the house at a particular time in the mornings and would not have testified that defendant was *never* at home in the mornings. Therefore, the aunt's excluded testimony was not necessarily inconsistent with J's testimony that defendant was sometimes at home after the grandmother left. Further, the aunt testified that she was in her room and would not "get up" in the mornings when the grandmother left for work, and J testified that the aunt would "be asleep" and would not get up until "[a] couple hours later." The trial court evaluated that testimony when making its ruling, stating that "it was also clear from the testimony that I heard that it's feasible at least that [J's] explanation that [the aunt] would have been asleep when this occurred, I didn't hear anything that necessarily contradicted that." Because the aunt was in her own room and was, according to J's testimony, asleep when the touching occurred in the mornings, the aunt could not have been fully aware of what did or did not happen in the grandmother's room at that time. Accordingly, the aunt's excluded testimony had only limited value, and its wrongful exclusion was harmless.

Affirmed.