Argued and submitted May 7, 2014, Spray High School, Spray, affirmed
May 20, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

OSCAR CLAUDE TAYLOR, JR.,
*Defendant-Appellant.*

Multnomah County Circuit Court
120230702; A152515

350 P3d 525

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Rond Chananudech, Deputy Public Defender, Office of Public Defense Services.

Matthew J. Lysne, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Jeremy C. Rice, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment convicting him of first-degree burglary, ORS 164.225, assigning error to the trial court's failure to acquit him of that crime. As relevant here, the first-degree burglary statute requires the state to establish that a defendant unlawfully entered a "dwelling," as defined in ORS 164.205(2). In this case, defendant entered a mostly enclosed, roofed area between and connected to a house and a garage. Defendant contends that, because the area that he entered was a separate area outside the house, the state failed to establish that he entered a dwelling. For the reasons that follow, we affirm.

We state the facts in the light most favorable to the state and review those facts to determine whether a rational factfinder could find that the state proved the required elements beyond a reasonable doubt. *State v. Forrester*, 203 Or App 151, 153, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006). The state charged defendant with two counts of first-degree burglary in connection with his entry into an area of a residence on North Seward Avenue in Portland that the home-owners refer to as their "garden room" or "breezeway." For ease of reference, we refer to the area into which defendant entered as the "breezeway." We note, however, that the area in this case does not comport with the common understanding of the term "breezeway," which is "a roofed open-air passage or porch connecting two buildings (as a house and garage) or forming a corridor between two halves of a building (as of a cabin)." *Webster's Third New Int'l Dictionary* 274 (unabridged ed 2002). The breezeway in this case, as the facts indicate below, is more enclosed than that dictionary definition suggests.

The breezeway connects a two-story house with a two-story, two-car garage, and shares a wall with both the house and garage. The roof of the garage dips down to form the roof of the breezeway and extends to meet the side of the house. There is a wall at the back end of the breezeway with windows and a door that leads to a backyard. The front wall of the garage extends to the side of the house to create a front wall for the breezeway. The front wall of the breezeway contains a doorless archway. Photographs of the breezeway

in the record indicate that the archway is not much wider than the size of a doorway. Thus, as the trial court indicated, the breezeway has "three sides enclosed with a fourth side with an archway that is not closed off[,] so to speak[,] to the elements." From inside the breezeway, there is a door to the garage that locks, but no door to the house.[1] Stated another way, there is no direct access to the house from inside the breezeway.

Instead, just outside the front wall of the breezeway, there is a landing next to the side door to the house. The landing is not enclosed by walls, but is surrounded by some low fencing, potted plants, and a metal trellis with a gate that leads to a driveway in front of the garage. The landing is mostly covered by roofing that extends from the side of the house. As such, a person can walk from the side door of the house and into the breezeway, and then into the garage, while remaining under cover of the roof.[2]

The homeowners use the breezeway to store various things, including nonperishable food items in a large cabinet, empty pop cans in a barrel, tools and equipment, as well as some furniture. They also use the breezeway as a dog run. Additionally, the homeowners use the breezeway to gain access to their garage and backyard. One of the homeowners testified that he views the area as part of his house.

One night, the homeowners noticed that some items in the breezeway had been moved while the homeowners had been inside the house. Later that night, one of the homeowners heard a noise coming from the breezeway. In response, he grabbed his shotgun (loaded with nonlethal rounds) and

---

[1] There are windows into a bedroom on the wall that the breezeway shares with the house.

[2] The trial court found that "someone [could] get from the garage into the house without having to be outside under the elements, because the roofline clearly goes *** across the breezeway and onto the *** [landing] and that's all covered in a way that keeps you out of the elements essentially." Defendant argues that the court's finding that a person can get from the garage into the house without having to be "outside" is not supported by evidence in the record and, therefore, does not bind this court under *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). We understand the court's finding to be that a person could walk from the house to the breezeway while staying on the covered landing, thus protecting them, to some extent, from the elements. We state the facts consistently with our understanding of the court's finding.

walked out of the house through the side door and onto the covered landing. As he was turning left to walk through the archway and into the breezeway, the homeowner saw defendant inside the breezeway. Defendant ran toward the homeowner, who shot defendant in the shoulder. Defendant was able to run past the homeowner and rode away on a bicycle, but he was later found and arrested by police. Defendant was charged with one count of first-degree burglary with intent to commit theft (Count 1) in connection with his attempt to steal pop cans from inside the breezeway and one count of first-degree burglary with intent to commit criminal mischief (Count 2) for moving the homeowners' table saw in the breezeway.

Defendant waived his right to a jury trial, and the case was tried to the court. A central issue at trial was whether the breezeway was part of the dwelling, such that defendant's entry into that part of the residence constituted first-degree burglary. The trial court found that the breezeway was part of the dwelling and, accordingly, found defendant guilty of Count 1.[3]

On appeal, in a single assignment of error, defendant argues that the trial court erred when it failed to acquit him of Count 1 because there was insufficient evidence to establish that he had entered a dwelling as required for first-degree burglary. The state's response is two-fold: first, it argues that defendant failed to preserve his argument below, and second, it contends that defendant's argument fails on the merits because the record demonstrates that the breezeway was part of a building (the house) that was a dwelling. For the reasons set forth below, we conclude that defendant preserved his argument, but we also conclude that there was sufficient evidence to establish that defendant entered a "dwelling" when he entered the homeowner's breezeway.

We begin with the state's preservation argument. Generally, we will not review a claim of error that was not raised in the trial court. ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."). "To preserve

---

[3] The court acquitted defendant of Count 2.

a claim of error concerning the legal sufficiency of the state's evidence, a defendant must—even in a case tried to the court—challenge the legal sufficiency of the evidence at trial." *Forrester*, 203 Or App at 155. In a bench trial, a defendant can preserve a challenge to the sufficiency of the evidence if the "defendant clearly raises the issue in closing argument." *Id.*

Here, defendant raised the issue of whether the state had proved beyond a reasonable doubt that the breezeway was a dwelling for purposes of first-degree burglary in his closing argument to the court. In its rebuttal argument, the state reiterated why it thought that the evidence established that the breezeway was part of the dwelling. And, in making its ruling, the trial court stated, "I don't think there's any doubt that this case turned on the definition of a dwelling." We conclude "that the policies underlying the rule have been sufficiently served," *State v. Walker*, 350 Or 540, 548, 258 P3d 1228 (2011) (internal quotation marks omitted), and that defendant's argument was sufficiently preserved for our review.

On the merits, the issue on appeal is whether sufficient evidence supported defendant's first-degree burglary conviction—specifically, whether a reasonable factfinder could find, beyond a reasonable doubt, that defendant had entered part of a dwelling when he entered the breezeway. That determination turns, in large part, on whether the trial court applied a proper understanding of the statutory definition of a dwelling, a matter over which the parties disagree.

As relevant here, a person commits first-degree burglary if the person enters or remains unlawfully in a building with intent to commit a crime therein and the building is a dwelling. ORS 164.215; ORS 164.225.[4] The only element

---

[4] ORS 164.215 provides:

"(1) * * * [A] person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein.

"(2) Burglary in the second degree is a Class C felony."

In turn, ORS 164.225 provides:

"(1) A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom the person:

at issue is whether defendant entered a dwelling when he entered the breezeway of the home. The term "dwelling," as it is used in ORS 164.225, is defined as

> "a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present."

ORS 164.205(2).

As mentioned above, defendant contends that the state's evidence was insufficient to establish that he entered a dwelling within the meaning of the first-degree burglary statute. Defendant does not dispute that the house itself was a dwelling under that statute. However, he argues that the breezeway was a "separate area *outside* the dwelling" and that the context and legislative history of the dwelling definition indicates that the legislature intended to exclude from that definition areas that are outside of, but attached to, the main house. (Emphasis in original.)

The state responds that, because the house in this case is a dwelling for purposes of the first-degree burglary statute, and because there was evidence that the breezeway was part of that house, a reasonable factfinder could conclude that defendant entered a dwelling when he entered the breezeway. In particular, the state points to evidence that the homeowner's residence is organized as a single structure—the primary living quarters, breezeway, and garage are all connected and share a common roofline and walls. In the state's view, "[e]ssentially, the individual parts of the home are connected as a single home," and, therefore, we "should conclude that every part of the home is a part of the 'dwelling.'" The state further contends that the context and legislative history of the statute upon which defendant relies do not indicate a legislative intent to exclude from the definition of dwelling an area like the breezeway in this case.

---

"(a) Is armed with a burglary tool or theft device as defined in ORS 164.235 or a deadly weapon;

"(b) Causes or attempts to cause physical injury to any person; or

"(c) Uses or threatens to use a dangerous weapon.

"(2) Burglary in the first degree is a Class A felony."

On an issue of statutory interpretation, we review for legal error. *State v. Paniagua-Montes*, 264 Or App 216, 221, 330 P3d 1250, *rev den*, 356 Or 510 (2014). We agree with the state and conclude that the trial court applied a correct understanding of the term "dwelling."

When interpreting a statute, we apply the methodology set out in *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Under that methodology, we begin by examining "the text of the statute in its context, along with relevant legislative history, and, if necessary, canons of construction." *State v. Cloutier*, 351 Or 68, 75, 261 P3d 1234 (2011). When a term is defined by statute, we look to the statutory definition to ascertain the plain meaning of the term, but when a term is not statutorily defined, we look to dictionary definitions to discern the plain, natural, and ordinary meaning of the statutory terms. *See Gaines*, 346 Or at 175.

Starting with the text, under the definition in ORS 164.205(2), a "dwelling" is a type of building "regularly or intermittently *** occupied by a person lodging therein at night[.]" *See State v. McKoon*, 127 Or App 64, 67, 871 P2d 127 (1994) (stating that, under the definitions in ORS 164.205, "dwellings are a subset of the larger category, buildings"). A "building," in turn, is defined by statute as follows:

> "'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being part of such building, a separate building."

ORS 164.205(1). Thus, in part, a "building" is defined as having "its ordinary meaning." The ordinary meaning of "building" is

> "**1:** a thing built: **a:** a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and *more or less completely enclosed by walls*, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in

one place (as boats or trailers) even though subject to occupancy **b:** a portion of a house occupied as a separate dwelling: APARTMENT, TENEMENT—used only in some legal statutes ***."

*Webster's Third New Int'l Dictionary* 292 (unabridged ed 1971) (boldface in original; emphasis added). And, as used in the statutory definition of dwelling, the dictionary definition of the verb "lodging" includes "**1a:** to occupy a place temporarily : stay overnight : SLEEP *** **b** (1): to have a residence : DWELL, STAY ***." *Id.* at 1329 (boldface in original).

Under those definitions, the plain meaning of a dwelling, as relevant here, is a roofed structure that is more or less completely enclosed by walls and is regularly or intermittently occupied by a person who resides in the structure at night.[5] *See State v. Barker/Phelps*, 86 Or App 394, 397, 739 P2d 1045 (1987) (stating that the ordinary meaning of "building" is "any roofed and walled structure constructed for permanent use") (citing *Webster's* at 292). Given that understanding of the term "dwelling," entry into any part of a building in which people reside at night qualifies as entry into a dwelling. In other words, '[t]he term 'dwelling' is not limited to the sleeping areas within a structure." *McKoon*, 127 Or App at 67 (holding that the defendant's entry into the foyer of a fraternity house was an entry into a "dwelling"); *see also State v. Haas*, 13 Or App 368, 510 P2d 852, *aff'd*, 267 Or 489, 517 P2d 671 (1973), *rev'd on other grounds*, 420 US 714, 95 S Ct 1215, 43 L Ed 2d 570 (1975) (entry into a garage attached to a home constituted entry into a "dwelling").

Defendant, however, urges a different understanding, primarily based on his view of the context of ORS 164.205(2). In overview, defendant points to the statutory scheme for burglary crimes that existed before the legislature adopted ORS 164.205(2) in 1971 as part of its overhaul of Oregon's criminal statutes and argues that a dwelling does not include a structure that is attached to, but lies outside of, the walls of the house where the sleeping quarters are located.

[5] We emphasize that the statutory definition of "building" is more expansive than the dictionary definition. Because this case involves a single-family house, we focus on the ordinary meaning of a building.

In 1967, the legislature created the Oregon Criminal Law Revision Commission (Commission) to revise Oregon's criminal statutes. *State v. Lonergan*, 344 Or 15, 25 n 3, 176 P3d 374 (2008) (Kistler, J., dissenting). "The Commission divided responsibility for drafting the revised criminal code among three subcommittees," which "produced drafts of the code and submitted those drafts, together with commentaries on them, to the Commission[.]" *Id.* The Commission then created a final draft of the proposed code, along with commentaries, which it presented to the legislature. *Id.*

Before the 1971 overhaul, Oregon's burglary statutes were codified at *former* ORS 164.210 to 164.260 (1969), *repealed by* Or Laws 1971, ch 743, § 432. Similar to the first- and second-degree burglary statutes that the legislature enacted in 1971, the former burglary statutes punished burglary of a dwelling more severely than burglary of any other kind of building. *Compare former* ORS 164.230 (providing for up to a 15-year sentence for burglary of a "dwelling house"),[6] *with former* ORS 164.240 (providing that the maximum sentence for burglary of a building other than a "dwelling house" was 10 years).[7]

In other respects, though, the older statutory scheme for burglary differed from that in the 1971 revision. Before 1971, the burglary statutes did not contain a definition of the term "building." They did, however, include a definition of the term "dwelling house":

"'Dwelling house' includes any building *of which any part* has usually been occupied by any person lodging

---

[6] *Former* ORS 164.230 provided:

"Any person who breaks and enters any dwelling house with intent to commit a crime therein, or having entered with such intent, breaks any dwelling house, or is armed with a dangerous weapon therein, or assaults any person lawfully therein, is guilty of burglary, and shall be punished upon conviction by imprisonment in the penitentiary for not more than 15 years."

[7] *Former* ORS 164.240 provided:

"Any person who breaks and enters any building within the curtilage of any dwelling house, but not forming a part thereof, or breaks and enters any building or part thereof, booth, tent, railroad car, vessel, boat, or other structure or erection in which any property is kept and which is not a dwelling house, with intent to steal or to commit any felony therein, is guilty of burglary and shall be punished upon conviction by imprisonment in the penitentiary for not more than 10 years."

therein at night, and any structure joined to and immediately connected with such building."

*Former* ORS 164.210(2) (emphasis added).

In its preliminary draft of the code, the subcommittee assigned to drafting the burglary statutes added a definition of "building" and replaced the "dwelling house" definition with a definition of a "dwelling." Criminal Law Revision Commission, Article 15, Preliminary Draft No 1, May 1968, 1. Under the first preliminary draft, a "dwelling" was defined as "a building which is usually occupied by a person, other than the actor, lodging therein at night, whether or not a person is actually present." *Id.* A later draft of that definition omitted the "other than the actor" wording. Criminal Law Revision Commission, Article 15, Preliminary Draft No 2, June 1968, 1. The Commission retained those definitions in the final draft of the code that it presented to the legislature. Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report, § 135, 143 (July 1970). Ultimately, the legislature, with minor changes, adopted those definitions through its enactment of ORS 165.205(1) and (2) in 1971.[8]

Defendant contrasts the streamlined reference to a "building" in the "dwelling" definition with the more descriptive reference in the "dwelling house" definition. *See* ORS 164.205(2) (stating that a dwelling means "a building which regularly or intermittently is occupied by a person lodging therein at night"). Defendant argues that the legislature's omission of the phrases "of which any part" and "and any structure joined to and immediately connected with such building" from the definition of dwelling in ORS 164.205(2) suggests that "structures or areas that are connected to

---

[8] The only change that the legislature made to the Commission's proposed draft of the dwelling definition, before enacting it in 1971, was the legislature's replacement of the phrase "which is usually occupied by a person" with the phrase "which regularly or intermittently is occupied by a person." *Compare* Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135(2), 143 (July 1970), *with* Or Laws 1971, ch 743, § 135(2). Similarly, the only change that the legislature made to the proposed draft of the building definition was the addition of the term "booth" among the kinds of structures included in the meaning of a "building." *Compare* Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135(1), 143 (July 1970), *with* Or Laws 1971, ch 743, § 135(1).

the dwelling, but outside of it, do not fit the definition of a dwelling."

Defendant correctly acknowledges that the Commission did not "directly discuss why [it] decided to exclude the quoted language." The commentary to the Commission's final draft of the proposed criminal code explains that the current dwelling definition is based on a New York statute:

> "Subsection (2). 'Dwelling.' This definition is based on the New York Statute, § 140.00, *and is much the same as the definition of 'dwelling house' in ORS 164.210(2)*: 'any building of which any part has usually been occupied by any person lodging therein at night, and any structure joined to and immediately connected with such building.'"

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135(2), 143 (July 1970) (emphasis added). Beyond that "much the same" statement of comparison, there is no further commentary about the change in the dwelling definition or its relationship to the old definition of "dwelling house."

Defendant does not point to any direct discussion by the subcommittee, the Commission, or the legislature itself, regarding that change. Nor are we aware of any legislative history directly addressing that change in the statutory language.

Defendant instead cites legislative history that, in his view, suggests that the legislature omitted that language because it considered areas outside of the house, but within the curtilage, to fall outside the definition of a dwelling. *See* Minutes, Criminal Law Revision Commission, Subcommittee No 1, May 27, 1968, 8 (discussing how, under the draft code, the burglary of a chicken house would be charged, and concluding that it would be second-degree burglary).[9] We have considered that legislative history and

---

[9] During that discussion, Donald Paillette, the Project Director for the Commission, explained that the burglary of a chicken house within the curtilage would constitute second-degree burglary under the draft code, a charge that was consistent with *former* ORS 164.240 (burglary of a building "within the curtilage of any dwelling house, but not forming a part thereof," is a less severe crime than burglary of a dwelling house). Minutes, Criminal Law Revision Commission, Subcommittee No 1, May 27, 1968, 8; Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, May 27, 1968, Tape 15, Side 2 (statement of

disagree, concluding that it is not useful to our analysis of the dwelling definition in this case. *See* ORS 174.020(1)(b), (3) (stating that parties may offer legislative history to aid the court in its construction of a statute, but that the court "shall give the weight to the legislative history that the court considers to be appropriate"); *see also Gaines*, 346 Or at 172 ("[A] party is free to proffer legislative history to the court, and the court will consult it after examining the text and context, even if the court does not perceive an ambiguity in the statute's text, where that legislative history appears useful to the court's analysis.")

The absence of legislative history on the difference between the definitions of dwelling house and dwelling at issue here is not for lack of opportunity. As mentioned above, the subcommittee drafting the burglary sections made changes to the proposed dwelling definition. *See* 271 Or App at 301. At a hearing on the first preliminary draft, the subcommittee considered the dwelling definition, and Donald Paillette, the Project Director of the Commission, read through the proposed definition and commentary. *See* Minutes, Criminal Law Revision Commission, Subcommittee No 1, May 27, 1968, 7. At that time, the proposed definition stated:

> "(3) 'Dwelling' means a building which is usually occupied by a person, other than the actor, lodging therein at night, whether or not a person is actually present."

Criminal Law Revision Commission, Article 15, Preliminary Draft No 1, May 1968, 1. The members of the subcommittee discussed whether the phrase "other than the actor," which did not appear in the then-current definition of dwelling house, was necessary. Minutes, Criminal Law Revision Commission, Subcommittee No 1, May 27, 1968, 7. Ultimately, the subcommittee decided to remove that phrase. *Id.*; *see* Criminal Law Revision Commission, Article

---

Donald Paillette). Defendant asserts that Paillette's conclusion in that regard "suggests that the legislature intended areas outside of the house, but within the curtilage, to fall outside the definition of dwelling." In doing so, defendant passes over the fact that the hypothetical burglary of the chicken house involved a building that was not attached to the house. The hypothetical adds nothing to an understanding of the legislature's intention with regard to structures attached to the house.

15, Preliminary Draft No 2, June 1968, 1 (defining "dwelling" as "a building which is usually occupied by a person lodging therein at night, whether or not a person is actually present"). No similar discussion was had regarding the omission of the language that is the subject of this case.

Ultimately, then, defendant's contention that the legislature intended to exclude areas like the breezeway in this case from the dwelling definition is based solely on the legislature's adoption of a definition of dwelling that did not include the specific language from the former dwelling house definition. We are not persuaded by that argument. "As we have noted on a number of occasions, arguments based on what the legislature did *not* say, either in the text of a statute or in its legislative history, are always tricky." *Waggoner v. City of Woodburn*, 196 Or App 715, 721, 103 P3d 648 (2004) (emphasis in original) (citing *State v. Young*, 196 Or App 708, 713, 103 P3d 1180 (2004), *rev den*, 338 Or 583 (2005) ("The committee's silence is notable only if what it *did* say purported to be a complete statement of its intentions." (Emphasis in original.))), and *Kerr v. Bradbury*, 193 Or App 304, 323, 89 P3d 1227 (2004), *rev dismissed as moot*, 340 Or 241, 131 P3d 737, *adh'd to on recons*, 341 Or 200, 140 P3d 1131 (2006) (stating that "reasoning from silence in the legislative record is at best risky and, at worst, illogical")). We have also cautioned that "[t]he fact that the legislature altered the wording of a statute does not always mean that it intended to alter the substantive effect of the statute." *Pete's Mountain Homeowners v. Ore. Water Resources*, 236 Or App 507, 521, 238 P3d 395 (2010) (citing, as an example, *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997)).

In this case, we think it more likely than not that the legislature adopted the dwelling definition without the specific language from the dwelling house definition because the new definition was broad enough to render such specific language unnecessary. We arrive at that conclusion based on the broad language of the dwelling and building definitions, as well as the Commission's indication that the dwelling definition is "much the same as" the pre-1971 definition of "dwelling house." The legislature adopted a definition of "dwelling" that includes any "building which regularly or intermittently is occupied by a person lodging therein at

night, whether or not a person is actually present." ORS 164.205(2). In turn, it created a broad definition of "building" that includes the ordinary meaning of that term, *i.e.*, a roofed structure that is more or less completely enclosed by walls. Those definitions, in combination, are broad enough to encompass the concept in the former dwelling house definition, namely that a "dwelling" is a building "of which any part has usually been occupied by any person lodging therein at night, and any structure joined to and immediately connected with such building." *Former* ORS 164.210(1). Furthermore, there is nothing to indicate that the subcommittee, the Commission, or the legislature meant anything by the difference in language between the dwelling house definition and the new dwelling definition.

In conclusion, under ORS 164.205(2), for purposes of a single-family house, a "dwelling" is a roofed structure that is more or less completely enclosed by walls and is regularly or intermittently occupied by a person who resides in the structure at night. Entry into any part of a building in which people reside at night is entry into a dwelling under ORS 164.205(2).

With that understanding, we turn to the evidence at trial, including photographs of the residence submitted as exhibits. That evidence demonstrated that the house, breezeway, and garage are all immediately contiguous to one another and are organized as a single structure. That is, the house, breezeway, and garage are physically attached to one another by virtue of shared walls; there are no gaps between the walls of the house, the walls of the breezeway, and the walls of the garage. Though access to the breezeway from the front of the property is through an open archway, the ordinary meaning of a building indicates that the structure need only be *mostly* enclosed by walls. Here, walls mostly enclose the structure. Furthermore, though there is no direct access to the house from inside the breezeway, the homeowners could enter the breezeway from the house by going out the side door of the house, walking on the covered landing, and through the archway. That walk to and from the house and breezeway occurs in a fenced and gated area of the property. A factfinder reasonably could find that the overall residence, including the breezeway, was a building.

Additionally, there was sufficient evidence from which a factfinder reasonably could find that the homeowners regularly occupied that building, including the breezeway portion. One of the homeowners testified that he and his wife regularly used the breezeway for access to the backyard and garage and that they used it to store food and other items. Finally, there was evidence from which a factfinder reasonably could find that the homeowners resided in the building at night. That they did not reside in the breezeway portion of the building is of no legal consequence. *See McKoon*, 127 Or App at 67. In all, the evidence presented was sufficient to support the trial court's determination that defendant's entry into the breezeway was an entry into a dwelling under the first-degree burglary statute.

Affirmed.