Argued and submitted September 16; conviction for burglary in the first degree
on Count 1 reversed and remanded for entry of a judgment of conviction for
burglary in the second degree, remanded for resentencing, otherwise affirmed
October 26, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LONIE CHARLES DAVIS, JR.,
*Defendant-Appellant.*

Clatsop County Circuit Court
14CR29816; A158964

385 P3d 1245

Laura A. Frikert, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

**SHORR, J.**

Defendant appeals from a judgment of conviction for multiple crimes, including burglary in the first degree, ORS 164.225 (Count 1). Defendant assigns error only to the trial court's denial of his motion for judgment of acquittal on Count 1. That count charged defendant with committing first-degree burglary by unlawfully entering and remaining in a dwelling with the intent to commit criminal mischief. "Dwelling" is a statutorily defined term and, in defendant's case, required the state to prove that the small boat that defendant entered was "regularly or intermittently * * * occupied by a person lodging therein at night." ORS 164.205(2). At issue in this appeal is whether evidence of defendant's own occupancy of that boat, the Amy M, was, standing alone, sufficient to show that the boat was a "dwelling." We conclude that, in this case, it was not, and reverse defendant's conviction for first-degree burglary.

When reviewing a trial court's denial of a motion for judgment of acquittal, we view the evidence in the light most favorable to the state to determine whether a rational trier of fact could find every element of the crime beyond a reasonable doubt. ORS 136.445; *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We state the following facts according to that standard.

The events that gave rise to this case occurred on a December morning at the Warrenton Marina, a public marina owned by the City of Warrenton. Defendant, who recently had lived on a boat at the marina, and who frequently hung out there, was seen boarding various docked boats. The marina's harbormaster called 9-1-1 and reported that he "just got a call that [defendant] was breaking into boats." While on the phone with the 9-1-1 operator, the harbormaster said that he just saw defendant "break into another one" and that defendant was "freaking out." The Warrenton Police Department and the Clatsop County Sheriff's Office responded. When the officers arrived, defendant was inside the Amy M, a boat docked at the marina that defendant did not own or have permission to be aboard. Defendant at first refused to come out of the Amy M. Eventually, a sheriff's deputy, Walker, convinced defendant to leave the boat.

When he emerged, however, defendant immediately dodged past the waiting police officers and jumped to another part of the dock. He continued to talk to Walker and taunt the other officers as Walker attempted to convince defendant to surrender. Defendant later climbed on to a neighboring boat and, after some time, surrendered to the police.

Defendant's conversation with Walker was recorded by a video camera on Walker's uniform. During that conversation, defendant made several statements about having previously been on the Amy M. First, defendant told Walker "I've been on this boat more times than you can count." Second, after Walker told defendant, "You unlawfully entered a boat that's not yours," defendant replied, "So what. I've done it 195 times." Third, defendant told Walker, "I sit in there many times," and, later, "This is dumb. *** I should have sat in the boat like I've done a hundred million times."[1]

Defendant was charged with two counts of burglary in the first degree, two counts of burglary in the second degree, and one count of criminal trespass in the second degree. The state called Walker, as well as other witnesses, and played the video from Walker's body-worn camera for the jury. At the conclusion of the state's case-in-chief, defendant moved for a judgment of acquittal on all counts. As relevant, defendant argued that, on Count 1, the state presented insufficient evidence that the boat was a dwelling. Specifically, defendant said, "Your Honor, legally speaking, [the Amy M] is no dwelling." Defendant contended that "in no way [was the Amy M] anything that anybody lodged in."

---

[1] Defendant does not challenge whether those statements provided sufficient evidence to infer that defendant "regularly or intermittently" lodged in the boat overnight. We note that defendant's statements were captured on video that was played for the jury, but that the transcriber's notes indicate that there was difficulty hearing large portions of the video, including many statements by defendant. We also note that both the state and defense counsel at trial represented defendant as having said that he had previously "stayed" on the Amy M. Defendant's statements, as recorded on the video, were that he had *been* on the boat before, that he entered the boat previously, and that he had sat in the boat before. Defendant did not say that he *stayed* on the boat or otherwise admit to lodging there overnight. At trial, defendant denied ever spending the night on the Amy M. However, because defendant does not raise the issue before us, we assume that there are sufficient facts in the record to support an inference that defendant "regularly or intermittently" lodged in the boat at night.

Rather, defendant argued that the state's evidence showed that the boat was uninhabitable and that his statements that he had stayed there many times were not credible.

The state argued in response that "defendant's statements that he'd stayed in that boat [the Amy M] over 150 times I think are what make it a dwelling that is constantly occupied. He stays there all the time, and that was his own statement." The state added that its evidence showed that the boat had "bedding mattresses, a sink, a microwave, everything that's in there to make that a livable space." The state asserted that defendant "said that he'd stayed there many, many times, which definitely under the Oregon law makes that a dwelling that had been recently occupied."

As relevant, the state also defended a separate count of first-degree burglary, Count 2, with respect to defendant's alleged conduct on a different boat called the American. The state argued that, on that count, the evidence was sufficient to show that the separate and abandoned American was a dwelling despite the state's admission that it presented no evidence that anyone had lived or stayed overnight in that boat. The trial court asked, as related to the American, "[J]ust the mere fact that [the American] contains lodging capability, are you suggesting that means it's a dwelling?" The state agreed that it was making that argument. The state also acknowledged, however, that "there is some case law that talks about trying to prove that it had [been occupied] at some point."

The trial court then granted defendant's motion for judgment of acquittal on the charge of first-degree burglary on Count 2, determining that the state presented insufficient evidence that the American was a dwelling because "there was no evidence that [the American] was ever used as lodging." The court told the state that it would be allowed to proceed on Count 2, as to defendant's alleged conduct on the American, on the lesser-included charge of burglary in the second degree. Burglary in the second degree, as discussed below, does not require as an element of proof that the defendant enter into a "dwelling" but only that the defendant enter a "building," a term defined statutorily to include boats. ORS 164.215(1); ORS 164.205(1). The trial court

then denied defendant's motions for judgment of acquittal on all other counts, including Count 1, the charge of first-degree burglary of the Amy M that forms the basis for this appeal. The trial court denied the motion without additional explanation.

Shortly after, defendant again raised the issue of whether the Amy M was a dwelling:

"[DEFENSE COUNSEL]: So did you accept [the state's] argument that if [defendant] himself stayed on the Amy M, then that was what could make it into a dwelling?

"THE COURT:   Well as I understand it, there are cases that talk about, you know, the use of a property.

"* * * * *

"[DEFENSE COUNSEL]:   The gravitas of the crime, Your Honor, is protection against invasion of premises likely to terrorize the occupants. So if that argument were to hold forth—

"THE COURT:   Not necessarily.

"[DEFENSE COUNSEL]:   How do you—how—he can't—he certainly didn't enter to terrorize himself.

"THE COURT:   Well, I'm just looking at the instruction that talks about what makes it—what makes a building a dwelling.

"[DEFENSE COUNSEL]:   Okay.

"THE COURT:   And a building that is regularly or intermittently occupied by a person lodging therein at night, whether or not a person is actually present. I was focusing more on the use.

"And if Mr.—I mean, property itself looked as if it was used as a dwelling because of the items about. And then [defendant] confirms his use of it as a dwelling. Again, confirming that it's used as a dwelling.

"So I don't know if it matters whether he is the only one occupied or that it's used as a dwelling. I think that's sufficient under the definition. So if I'm wrong, I'm wrong. But that's how I looked at it.

"[THE STATE]:   I felt the same way, Your Honor.

"The statutory difference I see there were some crimes require another person, and that explanation just required a person. So it could be the defendant himself.

"THE COURT:   We're focusing on the property—

"[THE STATE]:   Right.

"THE COURT:   —itself and its use rather than, you know, who might be there, who may not be there."

At the conclusion of the trial, defendant was found guilty on Count 1 of first-degree burglary of the Amy M and on additional counts not relevant to the legal issue in this appeal.

As noted, defendant assigns error only to the denial of the motion for judgment of acquittal on Count 1. Defendant argues on appeal that the trial court erred in denying his motion because a conviction for first-degree burglary based on an entry into a "dwelling" required proof that the boat defendant entered was "'regularly or intermittently' occupied by a person overnight" *other than defendant.* (Quoting ORS 164.205(2).) The state's principal position on appeal is that defendant did not preserve that argument because it is "qualitatively different" than the argument that he made to the trial court in support of his motion for judgment of acquittal.

We agree, and defendant does not dispute, that defendant's *initial* argument in support of his motion for judgment of acquittal was substantially different than his argument on appeal. That argument, in essence, was that the state presented no evidence of *anyone* lodging overnight on the Amy M because defendant's statements about his own occupancy were not credible. However, defendant subsequently raised in the trial court the issue of the proper interpretation of the term "dwelling" in the burglary statute and argued to the court that defendant's own occupancy of the Amy M could not, alone, make it a dwelling. In doing so, defendant advanced substantially the same argument he makes on appeal. The state had the opportunity to respond to that argument in the trial court, and it did make a brief legal argument that defendant's own occupancy was sufficient. The trial court interpreted the term "dwelling," considered defendant's argument, and explained its reasoning.

We are satisfied that the discussion of the proper interpretation of the term "dwelling" was in the context of defendant's motion for judgment of acquittal and, accordingly, defendant adequately preserved his argument. *State v. Clemente-Perez*, 357 Or 745, 752, 359 P3d 232 (2015) ("Thus, the question whether an argument has been preserved inevitably will turn on whether, given the particular record of a case, the court concludes that the policies underlying the preservation rule have been sufficiently served." (Internal quotation marks and brackets omitted.)); *Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 146-47, 309 P3d 1073 (2013) (where "all parties were fairly apprised of the argument and given an opportunity to respond to it, and the trial court was given the opportunity to address the matter as well," that was "all that the rule of preservation requires").

Having concluded that defendant preserved his argument, we turn to our analysis. The issue raised by the parties is whether evidence of a defendant's own occupancy of a building is sufficient to show that the building is "regularly or intermittently * * * occupied by a person lodging therein at night" and is therefore a "dwelling" for the purposes of first-degree burglary. ORS 164.205(2). That question is one of statutory interpretation, which we resolve by applying the familiar principles set out in *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009), and *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). Our task is to discern the legislature's intentions, which we do by examining the statute's text, context, and any legislative history that we find pertinent to the analysis. *Gaines*, 346 Or at 171-72.

We start with the relevant law. Oregon's burglary statutes "are part of a series of real property crimes of progressive severity." *State v. Sanchez-Alfonso*, 224 Or App 556, 561, 198 P3d 946 (2008), *rev den*, 346 Or 258 (2009).

"The series begins with second-degree criminal trespass, ORS 164.245, a Class C misdemeanor, which a person commits by entering or remaining unlawfully on premises. That offense becomes first-degree criminal trespass, ORS 164.255, a Class A misdemeanor, if the person enters certain types of premises, *such as dwellings* or railroad yards. First-degree criminal trespass becomes second-degree

burglary, ORS 164.215, a Class C felony, if the premises entered is a building and the person enters or remains in it with the intent to commit a crime therein. Second-degree burglary becomes first-degree burglary, ORS 164.225, a Class A felony, *if the building entered is a dwelling* or if enumerated aggravating factors exist, such as causing injury to another or threatening to use a dangerous weapon."

*Id.* (emphases added). Accordingly, the crimes of burglary and criminal trespass are elevated to the first degree if the property at issue is a dwelling. In the case of burglary, a second-degree burglary is a Class C felony punishable by up to five years in prison, while burglary in the first-degree is a Class A felony punishable by up to 20 years in prison.[2] ORS 164.215(2); ORS 164.225(2); ORS 161.605(1), (3).

The terms "dwelling" and "building" are statutorily defined. As used in the burglary statutes, the term "building" includes "its ordinary meaning," as well as "any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein." ORS 164.205(1). " 'Dwelling' means a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present." ORS 164.205(2).

Defendant does not contend that the Amy M was not a "building," as defined by the statute, only that it was not a "dwelling." Defendant argues that "[t]he definition of dwelling contemplates the potential presence of a person other than the burglar." Defendant grounds his argument

---

[2] A person commits second-degree burglary "if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215(1). The crime is enhanced to first-degree burglary when any one of a few additional factors is present:

"A person commits the crime of burglary in the first degree if the person violates ORS 164.215[, burglary in the second degree,] *and the building is a dwelling* or if in effecting entry or while in a building or in immediate flight there from the person:

"(a) Is armed with a burglary tool or theft device as defined in ORS 164.235 or a deadly weapon;

"(b) Causes or attempts to cause physical injury to any person; or

"(c) Uses or threatens to use a dangerous weapon."

ORS 164.225(1) (emphasis added).

in the statute's context and legislative history, which defendant contends make clear that first-degree burglary was intended to protect legitimate property rights and to prevent the occupiers of dwellings from the terror of an intruder. In response, the state contends that defendant's own use of the boat for overnight habitation was sufficient to meet the definition of a dwelling. The state argues that the plain language does not support defendant's interpretation and that the legislative history of the statute indicates that the legislature considered the limitation advanced by defendant and chose to reject it.

Regarding the plain language of ORS 164.205(2), the state argues that the use of the term "a person" in the definition of "dwelling" encompasses the defendant accused of the burglary. However, we conclude that the plain text of the statute is at least ambiguous as to whether the legislature intended such a construction. As noted, the statute states that a dwelling is a building that "regularly or intermittently is occupied by *a person* lodging therein at night, whether or not *a person* is actually present." ORS 164.205(2) (emphases added). Because a burglar generally will be present when committing the crime of burglary, the legislature's choice of wording indicates that the term "a person" may not include the perpetrator. *See State v. Dasa*, 234 Or App 219, 230-31, 227 P3d 228, *rev den*, 349 Or 173 (2010) ("[T]he threshold of ambiguity is a low one. It does not require that competing constructions be equally tenable. It requires only that a competing construction not be wholly implausible." (Internal quotation marks omitted.)).

Rather, the context and legislative history of the statutes at issue compel us to conclude that the legislature did not intend for a defendant's own prior, unlawful habitation in a building to convert that building into a dwelling for the purposes of first-degree burglary.

We turn first to the purpose and gravamen of the crime of first-degree burglary. Burglary is a crime "directed toward protecting *property* rights," and, specifically, "the right to occupy, invite, and exclude others from the premises." *Sanchez-Alfonso*, 224 Or App at 561-62 (emphasis in original). "The person who possesses that right is the victim of a

burglary." *Id.* at 562. We noted in *Sanchez-Alfonso* that "the legislature's decision to make some entries into buildings more severe crimes than other entries presumably reflects a desire to protect people who are or may be in the buildings from the effect of such entries." *Id.* at 563. However, that decision "does not change the character of the crime from a crime against property interests to a crime against people." *Id.*

The "dwelling" requirement of first-degree burglary serves a related, but different purpose: "The reason that invading a 'dwelling' is made a more serious crime is to '[protect] against invasion of premises likely to terrorize occupants.'" *State v. Ramey*, 89 Or App 535, 538, 749 P2d 1219, *rev den*, 305 Or 577 (1988) (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135, 143 (July 1970) (brackets in *Ramey*)). In *Ramey*, we held that a vacant apartment undergoing remodel was a "dwelling" for the purposes of first-degree burglary because it had previously been a residence and the owner was likely to rent it out in the near future. 89 Or App at 539. "Under the circumstances, defendant's entry was likely to terrorize an occupant." *Id.*

In defendant's case, whether the Amy M was just a building or was a dwelling determined whether defendant faced a conviction for a Class C felony with a possible five years in prison, or a Class A felony with up to 20 years in prison. That significant difference in exposure reflects the legislature's concern with protecting current and potential dwellers from the terror of an intruder. The difference between a building and a dwelling is not the *potential* for habitation—a building includes any structure "adapted for overnight accommodation of persons." ORS 164.205(1). The difference is whether there is evidence of *actual* habitation, either "regular[]" or intermittent[]." ORS 164.205(2).

Where, as here, the only evidence of overnight habitation is that of defendant's own unlawful occupation, those concerns justifying the more significant penalties of first-degree burglary are not present. Defendant's prior presence on the Amy M did not establish a property right to secure habitation that was then violated when defendant

unlawfully entered the building. Further, defendant's alleged prior stays on the boat did not create the potential for a terrorized occupant. In this case, the purported terrorized and the terrorizer would be one and the same. As defendant argues, allowing a defendant's own prior, unlawful occupation to elevate a second-degree burglary to the first degree would lead to "that absurd result where [defendant] is both the perpetrator of the crime—the person entering and remaining unlawfully in the dwelling—and the victim of the crime—the person who loses their sense of security, the person who regularly or intermittently occupied the boat at night."

The state argues, however, that legislative history contradicts defendant's argument because it shows that the drafters considered language that would have supported the interpretation urged by defendant but then decided to remove it. Accordingly, we turn to the legislative history of ORS 164.205 and ORS 164.225. As explained, we conclude that, to the extent the legislative history is helpful, it tends to support defendant's argument.

The burglary statutes and the accompanying definitional statute were enacted as part of the 1971 Legislative Assembly's comprehensive revision of Oregon's Criminal Code. As a part of that revision, the legislature in 1967 created the Oregon Criminal Law Revision Commission to revise the state's criminal laws. *See State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980) (describing the history of 1971 Criminal Code revision). The commentary to the 1971 Criminal Code, and "the discussions that preceded the adoption of the final draft," are significant sources of legislative history for statutes enacted with the criminal law revision. *Gaines*, 346 Or at 178 (internal quotation marks omitted).

We reviewed the legislative history relevant to the definition of "dwelling" and its part in the burglary statutes in *State v. Taylor*, 271 Or App 292, 300-04, 350 P3d 525 (2015). We noted that, in undertaking the revision, the subcommittee assigned to drafting the burglary statutes drafted a definition for the term "dwelling" that would have explicitly excluded the perpetrator of the crime. *Taylor*, 271 Or App at 300-01. In the subcommittee's preliminary

draft of the code, that definition read, "'Dwelling' means a building which is usually occupied by a person, *other than the actor*, lodging therein at night, whether or not a person is actually present." Criminal Law Revision Commission, Article 15, Preliminary Draft No 1, May 1968, 1 (emphasis added). "The members of the subcommittee discussed whether the phrase 'other than the actor,' which did not appear in the then-current definition of dwelling house, was necessary. Ultimately, the subcommittee decided to remove that phrase." *Taylor*, 271 Or App at 303.

We did not, in *Taylor*, relate the details of that discussion, or consider the implication of the subcommittee's decision to delete the phrase "other than the actor." We do so now. In explaining why that clause was included in the definition of "dwelling," Donald Paillette, the Project Director of the commission, told the subcommittee members, "I inserted that to avoid the incongruous result of the person who enters his own home to commit a crime therein being charged with burglary." Tape Recording, Criminal Law Revision Commission, Subcommittee No 1, May 27, 1968, Tape 15, Side 2 (statement of Donald Paillette). A brief discussion ensued, during which members asked only whether the phrase was necessary. *Id.* Paillette explained, "All I was trying to do was say what I think that the law says anyway, *** to express that we're not talking about an individual entering his own home with an intent to commit a crime." *Id.*; *see also* Criminal Law Revision Commission, Article 15, Preliminary Draft No 1, May 1968, 2 ("The phrase 'other than the actor' has been inserted in this draft to preclude the possible incongruous result of a person who enters his own home with intent to commit a crime therein being charged with burglary."). The subcommittee concurred that the phrase was not necessary, and agreed to delete it from the statute. *Id.*

That legislative history indicates that the drafters did not remove the phrase "other than the actor" with the intention of broadening the scope of the definition to include the perpetrator of a burglary, as the state argues. Rather, the drafters' discussion indicates that whatever clarification the phrase "other than the actor" was intended to provide,

the committee believed it to be unnecessary. As Paillette told the subcommittee, that phrase reflected what he believed "the law says anyway." The logical inference, then, is that the definition of "dwelling," even without the phrase "other than the actor," was understood by the subcommittee to naturally exclude the actor. That is consistent with the stated purpose of the statutory scheme, as articulated by the drafters—*viz.*, to punish more seriously a burglar who enters a dwelling because of the additional harm caused to any current or potential inhabitants. *Ramey*, 89 Or App at 538 ("The reason that invading a 'dwelling' is made a more serious crime is to '[protect] against invasion of premises likely to terrorize occupants.'" (Quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 135, 143 (July 1970) (brackets in *Ramey*).)).

Accordingly, for the reasons explained above, we conclude that a defendant's own unlawful habitation in a building is insufficient to convert that building into a "dwelling" for the purposes of first-degree burglary. In the present case, the trial court erred in denying defendant's motion for judgment of acquittal on Count 1 based on its conclusion that evidence of defendant's own, unlawful prior occupation of the Amy M was sufficient to prove that the boat was a "dwelling." We reverse that conviction and remand for an entry of a conviction for the lesser-included offense of burglary in the second degree, ORS 164.215. *See State v. Touchstone*, 188 Or App 45, 48, 71 P3d 536 (2003) (remanding for entry of judgment of conviction on lesser-included offense is appropriate when the elements of the lesser-included offense have been alleged and there is no dispute as to the sufficiency of the evidence as to those elements).

Conviction for burglary in the first degree on Count 1 reversed and remanded for entry of a judgment of conviction for burglary in the second degree; remanded for resentencing; otherwise affirmed.